UNITED STATES of America,

v.

James **PALMIERI**, Appellant.

No. 93–5134.

United States Court of Appeals,
Third Circuit.

Argued Oct. 7, 1993.

Decided April 11, 1994.

Sur Petition for Rehearing May 11, 1994.

David E. Schafer (Argued), Office of Federal Public Defender, Trenton, NJ, for appellant.

Edna B. Axelrod, Daniel A. Greenstone (Argued), Michael Chertoff, Office of the U.S. Atty., Newark, NJ, for appellee.

Before: HUTCHINSON, COWEN and NYGAARD, Circuit Judges

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

James Palmieri appeals from his conviction on one count of knowingly engaging in the business of dealing in firearms without being licensed to do so, in violation of 18 U.S.C. §§ 922(a), 924(a), and one count of knowingly possessing and transferring a machine gun, in violation of 18 U.S.C. §§ 922(o), 924(a)(2). He contends that the district court erred (1) by precluding a defense based on his license as a collector of curios and relics, (2) in responding to a jury question regarding licenses for selling firearms, (3) in charging the jury on the machine gun element of the second count, (4) by admitting lay opinion and hearsay testimony relating to this element, and (5) in charging the jury on the intent requirement for the second count. We conclude that these assertions of error are without merit and will affirm.

### I.

The facts are essentially undisputed. Palmieri met Ronald Lyman, an FBI special agent, and John Debenedictus, a paid informant, and sold Lyman three nine-millimeter semiautomatic pistols (a German Luger, a Belgian Browning and a French MAB) for $1,300. Although these weapons were manufactured during World War II, each was functional. The following week, Palmieri, Lyman and Debenedictus met again and Palmieri sold Lyman an M–1 carbine semiautomatic rifle for $400. This weapon was a remanufactured World War II vintage firearm, but it was also functional and could be converted to be fully automatic.

Two weeks later, Palmieri, Lyman and Debenedictus once again met, and Palmieri sold Lyman a 7.92 millimeter Chinese type 26 machine gun for $5,000.[1] Although at the

---

1. This weapon is a copy or modification of a Czechoslovakian model 26 machine gun which was mistakenly referred to in the indictment.

time of sale, Palmieri stated that the machine gun was fully operational and fully automatic, when FBI special agent Robert W. Murphy later examined the weapon, it was not operational. The machine gun was designed to fire in a fully automatic mode, but it was missing a required breechblock. The government and Palmieri dispute whether the machine gun was operational when Lyman purchased it. The weapon did, however, have a frame or receiver which is defined as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism...." 27 C.F.R. § 179.11 (1993). Palmieri met with Lyman and Debenedictus on several other occasions, but sold them no other firearms.

At trial, the government introduced tape-recorded offers by Palmieri to sell other weapons, store stolen goods and obtain counterfeit passports. Palmieri's response to this evidence was that these offers were puffery or were misconstrued. During the relevant time period, Palmieri held a license from the Bureau of Alcohol, Tobacco and Firearms ("ATF") as a collector of curios and relics. The jury found Palmieri guilty on one count of engaging in the business of dealing in firearms and one count of possessing and transferring a machine gun. The district court sentenced him to 27 months' imprisonment on each count to be served concurrently.

## II.

Count one of the superseding indictment charged Palmieri with violating 18 U.S.C. § 922(a), which provides that:

(a) It shall be unlawful—

(1) for any person—

(A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms....

18 U.S.C.A. § 922(a)(1)(A) (West Supp.1993). The first element of a violation of § 922(a) is that the defendant "engaged in the business"

which, as applied to a dealer in firearms, is defined as

a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms....

*Id.* § 921(a)(21)(C).

Although the definition explicitly refers to economic interests as the principal purpose,[2] and repetitiveness as the *modus operandi,* it does not establish a specific quantity or frequency requirement. In determining whether one is engaged in the business of dealing in firearms, the finder of fact must examine the intent of the actor and all circumstances surrounding the acts alleged to constitute engaging in business. This inquiry is not limited to the number of weapons sold or the timing of the sales. For example, the location of the sales, the time and conditions under which the sales occur, the defendant's behavior before, during and after the sales, the price charged for and characteristics of the firearms sold, and the intent of the seller are all potentially relevant indicators of whether one has "engaged in the business" of dealing.

A statutory exception to the definition of "engaged in the business" is set forth in 18 U.S.C. § 921(a)(21)(C), which provides that it

shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms....

*Id.* § 921(a)(21)(C); *see also id.* § 922(a)(22) (objective of livelihood and profit contrasted with improving or liquidating a personal firearms collection). Hence, if Palmieri sold firearms to Lyman from his private collection, he had a defense under § 921(a)(21)(C) that these sales were "for the enhancement of a personal collection or for a hobby," or constituted the sale of "all or part of his personal collection of firearms." Once again,

2. The phrase "with the principal objective of livelihood and profit" is defined as meaning that "the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain...." *Id.* § 921(a)(22).

however, there is no bright-line rule. The fact-finder must determine whether the transactions constitute hobby-related sales or engagement in the business of dealing from the nature of the sales and in light of their circumstances.

■ Whereas the first element of a § 922(a) violation addresses the character of the conduct, the second element focuses on the status of the defendant, namely, whether he or she is a licensed dealer. A "dealer" is statutorily defined as "any person engaged in the business of selling firearms at wholesale or retail," *id.* § 921(a)(11)(A), and a "collector" is defined as "any person who acquires, holds, or disposes of firearms as curios or relics. . . ." *Id.* § 921(a)(13).[3] Section 922(a) requires inquiry into both the defendant's conduct and status. If the conduct constituted engaging in the business of dealing in firearms, then it is illegal unless the defendant is a licensed dealer. On the other hand, sales by a licensed or unlicensed collector from a personal collection in furtherance of a hobby are not illegal. Once the conduct is deemed equivalent to the business of dealing, however, collector status will not shield a defendant from liability under § 922(a).

■ The district court included the statutory exception to "engaged in the business," *see* § 921(a)(21)(C), and the definition of "with the principal objective of livelihood or profit," *see id.* § 921(a)(22), in its charge to the jury. It further instructed that:

In this case, you have heard testimony that during the time period covered by the indictment, the defendant, James Palmieri, was a licensed firearms collector. I instruct you as a matter of law, that the collector's license possessed by the defendant did not authorize him to sell any firearms, even firearms that have been classified as curios or relics. I further instruct you that what the defendant believed his collector's license authorized him to do is not an issue in this case, it is

therefore, irrelevant to your determination of the charges in this case.

The instruction that the collector's license did not authorize any sales of firearms, although literally correct is potentially misleading. The collector's license is immaterial because any person can make occasional sales from his or her personal collection without violating 18 U.S.C. § 922(a), whether a licensed collector or not. Nonetheless, as stated above, a collector's license does not authorize its holder to engage in the business of dealing in firearms. Hence, the instruction that Palmieri's collector's license, in and of itself, did not authorize him to make the sales to Lyman is correct, albeit a bit truncated. Palmieri's status as a licensed collector was not dispositive, and he had no legally cognizable defense based on his collector's license alone. The jury was still required to determine the character of the transactions, either as occasional sales in furtherance of a hobby or as engagement in the business of dealing in firearms. *See United States v. Hooton,* 662 F.2d 628, 635 (9th Cir.1981) (distinguishing intent to engage in business from intent to enhance a gun collection), *cert. denied,* 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982).

■ Although Palmieri was precluded from arguing that the sales were authorized by his collector's license, the jury charge included the statutory exception for sales from or to enhance a personal collection. It also distinguished between the intent of obtaining a livelihood and profit from the intent of liquidating a personal collection. Thus, the jury was given the option of finding that Palmieri's actions did not constitute engaging in the business of dealing, irrespective of his collector's license. We have reviewed the entire jury charge and conclude that it was sufficient to enable Palmieri to present the defense that his sales were in connection with his hobby. *See Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (considering challenged jury instruction "in the context of the in-

---

**3.** "Curios and relics" are defined as "[f]irearms which are of special interest to collectors by reason of some quality other than is associated with firearms intended for sporting use or as offensive or defensive weapons." 27 C.F.R.

§ 178.11 (1993). The category of curios and relics which is relevant in this case is "[f]irearms which were manufactured at least 50 years prior to the current date. . . ." *Id.*

structions as a whole and the trial record"); *United States v. McGill,* 964 F.2d 222, 235 (3d Cir.) (determining "whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury") (quoting *Link v. Mercedes–Benz of North America, Inc.,* 788 F.2d 918, 922 (3d Cir.1986)), *cert. denied,* —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 588 (1992).[4]

### III.

During their deliberations, the jury asked the following question: "Do you need a license to sell firearms under all circumstances?" The district court answered this question by telling the jury:

Ladies and gentlemen of the jury, counsel have seen your question, and I have reviewed it with them, and the best answer that I can give you to this is that that is not your concern as a jury. You do not need to know everything about under what circumstances a person could or could not do this. What you need to do, and I'm going to try to help you to do it by refocusing you on the instructions that you've been given, is you need to just bear in mind what we have told you about the law which is applicable to this case. And that is that you need to determine on Count One and I assume this question is directed at Count One, whether this individual, defendant, was engaged in the business of dealing in firearms without a license, without a federal dealer's license—federal firearm dealer's license. Now, the language of that phrase is referred to in the jury instructions. The term "engaged in the business" is defined for you and it refers to

certain activities and then it says, but the terms [sic] does not include and then you can see what that says. So I refer you to that page to focus on that definition of what is engaged in the business.

Furthermore, I refer you to the instruction that you received on the next page, which is I instructed you as a . . . matter of law that the collector's license possessed by the defendant did not authorize him to sell any firearms, and that whatever he believed his collector's license permitted him to do, authorized him to do, is not an issue in this case, and is not for you to consider.

Thirdly, I refer you to the instructions . . . on page 14, which defines [sic] licensed dealer, and which sets [sic] forth what the Secretary of the Treasury discovered through searching the records of that agency, namely, that in the period in question, there is no record that the defendant currently held a federal firearms dealer's license. So, the question, do you need a license to sell firearms under all circumstances? You don't need to answer that question. What you need to answer within the instructions that you've been given, is the question of guilt or not guilt on Count One and Count Two of this indictment.

The district court discussed with counsel how best to answer the jury's question before doing so. Defense counsel did not object to the proposed answer, and Palmieri's objection now that the district court should have specifically referred to the language in the statutes defining "engaged in the business" and "objective of livelihood and profit" does not constitute plain error. *See* Fed. R.Crim.P. 52(b); *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (explaining that plain errors are only those which undermine fundamental fairness

---

**4.** Palmieri includes one sentence in his appellate brief arguing that the district court held him "strictly liable" on the first count. Although he did not object to the intent charge for this count, we note that the government must prove that a defendant "willfully" engaged in the business of dealing in firearms. *See* 18 U.S.C.A. § 924(a)(1)(D) (West Supp.1993). The district court instructed the jury that: "[I]t is not required that James Palmieri knew that a license was required, nor that he had knowledge that he was breaking the law. However, the Government must prove that James Palmieri acted vol-

untarily and not because of mistake or accident." This instruction alone would have been insufficient to convey the requirement of willfulness, but in light of the charge defining the "principal objective of livelihood and profit" and the evidence presented, it did not constitute plain error. *See Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (asserting that absent objection, improper instructions will rarely justify reversal of a criminal conviction); *Polsky v. Patton,* 890 F.2d 647, 651–52 (3d Cir.1989) (holding that omission of term "malice" was harmless since charge given was functionally equivalent).

and contribute to a miscarriage of justice); *Government of Virgin Islands v. Smith,* 949 F.2d 677, 681 (3d Cir.1991) (providing framework for plain error analysis).

### IV.

■ The third issue focuses on the definition of "machine gun" for purposes of 18 U.S.C. § 922(*o* ) which states in relevant part that: "[I]t shall be unlawful for any person to transfer or possess a machine gun." 18 U.S.C.A. § 922(*o* ) (West Supp.1993). The term "machine gun" is statutorily defined in 26 U.S.C. § 5845(b), which provides in part that:

*[A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon,* any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C.A. § 5845(b) (West 1989) (emphasis added); *see also* 18 U.S.C.A. § 921(a)(23) (West Supp.1993) (referring to 26 U.S.C. § 5845(b)). The district court charged the jury with the emphasized portion of the statute only, and the jury later asked the district court to "[p]lease complete the second sentence, which reads, 'The term shall also include the frame or receiver of any such weapon.'" The district court answered as follows: "There is no need to complete that sentence for purposes of this case, because it—that sentence goes on and refers to things which are not relevant to this case, so you may consider that phrase to be the complete statement in that second sentence."

Palmieri contends that the second sentence of § 5845(b) should be interpreted as creating a three-pronged definition for the term "machine gun." In other words, a machine gun includes a (1) frame or receiver, in conjunction with (2) any part or combination of parts designed and intended to convert a weapon into a machine gun, *and* (3) any combination of parts from which a machine gun can be assembled. *See United States v. Seven Miscellaneous Firearms,* 503 F.Supp. 565, 575 (D.D.C.1980) (reasoning that "frame or receiver" should not be contemplated in isolation since Congress used the conjunctive rather than disjunctive in the second sentence of § 5845(b)). An alternative interpretation is that the second sentence of § 5845(b) "reflects a purpose to include three new categories of weapons within the definition of a machine gun." *United States v. Kelly,* 548 F.Supp. 1130, 1133 (E.D.Pa.1982).

We exercise plenary review over this question of statutory interpretation, *see McGill,* 964 F.2d at 235, and believe that the answer is found in the plain language of the statute itself which provides that machine gun "*shall also include*" items A, items B and items C. This language confutes Palmieri's argument and, indeed, includes three new categories within the definition of machine gun. Reading the statute in the conjunctive would lead to the unlikely result that both the parts for conversion into *and* the parts for assembly of a machine gun as well as a frame or receiver are required.

Alternatively, where the statutory language is susceptible to more than one interpretation, a court "appropriately may refer to a statute's legislative history to resolve statutory ambiguity." *Patterson v. Shumate,* —— U.S. ——, ——, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) (quoting *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991)). In this case, the legislative history clearly indicates an intent to expand the definition of machine gun. The Senate Report provides in part that:

The second sentence [of § 5845(b) ] is new. It provides three new categories as included within the term "machine gun": (1) the frame or receiver of a machine gun, (2) any combination of parts designed and intended for use in converting a weapon other than a machine gun into a machine gun; for example, so-called conversion kits, and (3) any combination of parts from which a machine gun can be assembled if such parts are in the possession of a person. This is an important addition to the defini-

tion of "machine gun" and is intended to overcome problems encountered in the administration and enforcement of existing law. It is intended that the three additional categories be subject to all the provisions of the chapter applicable to serviceable machine guns.

S.Rep. No. 1501, 90th Cong., 2d Sess. 45–46 (1968) (quoted in *Kelly,* 548 F.Supp. at 1133).

We believe that the statutory language in § 5845(b) and the legislative history mandate an interpretation that creates three new categories for machine guns. This conclusion is supported by case law from other circuits. *See, e.g., Thompson/Center Arms Co. v. United States,* 924 F.2d 1041, 1047 (Fed.Cir.1991) (finding that 1968 amendments to machine gun definition provided three new categories), *aff'd,* —— U.S. ——, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992); *United States v. Bradley,* 892 F.2d 634, 635 (7th Cir.) (asserting that parts may be machine guns without a frame or receiver), *cert. denied,* 495 U.S. 909, 110 S.Ct. 1935, 109 L.Ed.2d 298 (1990); *United States v. Griley,* 814 F.2d 967, 975 (4th Cir.1987) (finding that frame or receiver in conjunction with evidence at trial was sufficient to show that weapon was a machine gun); *United States v. Campbell,* 427 F.2d 892, 893 (5th Cir.1970) (implicitly holding that parts may be machine guns without a frame or receiver), *cert. denied,* 402 U.S. 975, 91 S.Ct. 1673, 29 L.Ed.2d 140 (1971).[5]

## V.

■ Palmieri's fourth contention is that the district court erred by allowing certain testimony from government witnesses in relation to the second count, possession and transfer of a machine gun. For example, an FBI special agent who had not been qualified to testify as an expert witness described the fifth weapon that Palmieri sold to Lyman as a "fully automatic machine gun." Palmieri did not object, but now claims that this was both an impermissible opinion from a lay witness and a legal conclusion. Another agent gave the following testimony as to the

availability of a replacement breechblock: "I called one of the larger gun part stores in the country and asked them if I can get one and they told me that they knew of a few people who had them and I can get one if I wanted." Once again, Palmieri did not object, but he now asserts that this was hearsay. On two other occasions, Palmieri did object to opinion testimony by government witnesses who had not been qualified to testify as experts in the area of questioning. Federal Rule of Evidence 701 permits a lay witness to give an opinion which is: "(a) rationally based on the perception of the witness and; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Thus, a lay opinion is permissible when the witness has "firsthand knowledge of the factual predicates that form the basis for the opinion ... [and] it would help the jury to resolve a disputed fact." *Government of Virgin Islands v. Knight,* 989 F.2d 619, 629–30 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993); *see also Teen–Ed, Inc. v. Kimball Int'l, Inc.,* 620 F.2d 399, 403 (3d Cir.1980) ("A lay witness in a federal court proceeding is permitted under Fed.R.Evid. 701 to offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived."). Also, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704. Palmieri challenges the lay opinion testimony of three FBI special agents regarding machine guns. The agents' experience with machine guns, however, was developed during direct examination, and their testimony was subject to cross examination. Under these circumstances, we conclude that this testimony was admissible under Rule 701.

■ As to Palmieri's hearsay argument, Federal Rule of Criminal Procedure 52(a) provides that: "[any] error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The jury need not have been "totally unaware" of the

---

5. Adoption of this broader interpretation preempts any issue stemming from the missing breechblock. The fifth weapon that Palmieri sold to Lyman could fit within the definition of

machine gun as a weapon that could be "readily restored to shoot" or the "frame or receiver of any such weapon." *See* 18 U.S.C.A. § 5845(b) (West 1989).

error; rather, a court must "find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991); *see also United States v. Pavelko*, 992 F.2d 32, 35–36 (3d Cir.) (considering "whether there was evidence of sufficient quality and quantity presented at trial to support the jury's verdict"), *cert. denied sub nom. Kenney v. United States*, — U.S. —, 114 S.Ct. 272, 126 L.Ed.2d 223 (1993). The testimony regarding a replacement breechblock was hearsay. Because, however, the evidence showed that the fifth weapon was, at a minimum, a frame or receiver, we conclude that its admission was harmless error.

## VI.

■ Finally, Palmieri challenges the district court's jury instruction on the intent requirement for the second count. 18 U.S.C. § 924(a)(2) requires the government to prove knowing possession or transfer of a machine gun. The district court instructed the jury that:

> Knowingly means, with knowledge, that is, voluntarily and intentionally and not because of mistake or accident or other innocent reason. The purpose of adding the word knowingly is to insure that no one would be convicted for an act done because of mistake or accident or other innocent reason. The Government is not required to prove that the defendant knew that his acts were unlawful.

Although Palmieri did not object then, he now contends that the district court's failure to instruct the jury that the government must prove that Palmieri knew the weapon was a machine gun or a firearm under 26 U.S.C. § 5845 constituted plain error.

In *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), the Su-

preme Court discussed the knowledge requirement under an analogous statute, 26 U.S.C. § 5861(d), which prohibits receipt or possession of an unregistered firearm. The district court had dismissed the indictment because of the lack of a scienter allegation. But § 5861(d) has no statutory intent requirement, and the *Freed* Court reversed the dismissal. *See id.* at 607–10, 91 S.Ct. at 1117–18. It reasoned that § 5861 was "a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades [statutorily defined as firearms] is not an innocent act." *Id.* at 609, 91 S.Ct. at 118. Although a violation of the statute at issue here does have a statutory knowledge requirement, we must define the scope of that requirement.

Ultimately, we are not persuaded by the argument that the government had to prove Palmieri knew that the fifth weapon he sold to Lyman was a machine gun or firearm within the meaning of 26 U.S.C. § 5845. The knowledge requirement for illegal possession of a machine gun has two potential components, knowledge that possession of the weapon was legally proscribed and knowledge that the weapon possessed the statutorily defined physical characteristics of a machine gun. In light of "the venerable principle that ignorance of the law generally is no defense to a criminal charge," *Ratzlaf v. United States*, — U.S. —, —, 114 S.Ct. 655, 663, 126 L.Ed.2d 615 (1994) (citations omitted), and the absence of a congressionally created exception for 18 U.S.C. § 922(o ), we discard the proposition that Palmieri had to know that he was violating the law. Whether Palmieri knew that the weapon he possessed fit the definition of a machine gun under § 5845 presents a closer question.[6]

■ In the context of receipt or possession of an unregistered firearm, some circuits

---

6. We note that the Supreme Court has granted review and heard oral argument in *Staples v. United States*, No. 92–1441, which framed the issue of whether Congress, when enacting 26 U.S.C. §§ 5861(d), 5845 and 18 U.S.C. § 922(o ), intended to create a strict liability crime. *See* 62 U.S.L.W. 3357 (Nov. 23, 1993). The defendant in *Staples* was convicted of unlawful possession

of an unregistered machine gun, in violation of 26 U.S.C. § 5861(d), and asserted on appeal that the government must prove that he knew that the weapon he possessed was subject to registration. *See United States v. Staples*, 971 F.2d 608, 612 (10th Cir.1992), *cert. granted*, — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993).

have required knowledge that the weapon falls within the statutory definition.[7] However, the majority of circuits have set a lower threshold, requiring only knowledge that the weapon was a firearm in the general sense,[8] or mere knowledge that it was potentially dangerous and subject to regulation.[9] We agree with the common-sense approach of the latter position which requires a person possessing a regulated device to investigate the scope of his or her legal duties rather than blindly profess ignorance of the applicable regulations. Accordingly, we find that the district court's instruction on the intent requirement for the second count did not constitute plain error.

## VII.

During the oral argument before us, an issue arose as to whether the second count was facially insufficient on the ground that Palmieri, a licensed collector, sold a machine gun that is classified as a "curio or relic" and thus not subject to 18 U.S.C. § 922(*o*).[10] Section 922(*o*) provides that:

(*o*)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

18 U.S.C.A. § 922(*o*) (West Supp.1993). This provision took effect on May 19, 1986, and the legislative history reflects an effort to allow "possessers [sic] of lawfully registered machine guns to continue their legal possession," and to enable "a person to dispose of an unwanted legally registered machine gun by permitting the Secretary to buy a machine gun from such person." H.R.Rep. No. 99–495, 99th Cong., 2d Sess. 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1330. Based on the plain language of § 922(*o*)(1) and the presence of two statutorily defined exceptions to the prohibition against transferring or possessing a machine gun in § 922(*o*)(2), we decline to adopt a third exception for a collector's possession of machine guns that qualify as curios or relics.

It may be argued that 18 U.S.C. §§ 922(a)(4), 922(b)(4) and the ATF "Fire-

---

**7.** *See United States v. Williams,* 872 F.2d 773, 777 (6th Cir.1989) (requiring knowledge that weapon was automatic); *United States v. Anderson,* 885 F.2d 1248, 1251 (5th Cir.1989) (requiring knowledge that weapon fell within statutory definition of a firearm); *cf. United States v. Harris,* 959 F.2d 246, 261 (D.C.Cir.) (requiring knowledge that receipt of weapon was proscribed), *cert. denied,* — U.S. —, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992).

**8.** *See United States v. Mittleider,* 835 F.2d 769, 774 (10th Cir.1987) (requiring knowledge of possession of firearm in the general meaning of the term), *cert. denied,* 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988); *United States v. Shilling,* 826 F.2d 1365, 1368 (4th Cir.1987) (same), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988); *Morgan v. United States,* 564 F.2d 803, 805 (8th Cir.1977) (same); *cf. United States v. Gonzalez,* 719 F.2d 1516, 1522 (11th Cir.1983) ("[G]overnment does *not* have to prove that the defendant knew that the weapon in his possession was a 'firearm' within the meaning of the statute, or that he knew registration was required."), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984).

**9.** *See United States v. Kindred,* 931 F.2d 609, 612 (9th Cir.1991) ("[G]overnment must prove that the defendant knew that he possessed a dangerous device of a type that would alert one to the likelihood of regulation."); *United States v. Ross,* 917 F.2d 997, 1001 (7th Cir.1990) ("Once a person knows that he possesses the sort of device that is extensively regulated, ... it serves the statutory scheme to cast on that person the risk of inaccuracy in evaluating facts and law."), *cert. denied,* 498 U.S. 1122, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991); *United States v. DeBartolo,* 482 F.2d 312, 316 (1st Cir.1973) ("It is enough to prove [defendant] knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation.").

**10.** Palmieri never contended that the machine gun he transferred was exempt from the restriction present in section 922(*o*) based on its status as a curio or relic either in the district court or in the briefs he filed on appeal. Judge Hutchinson believes the argument is waived, even though Palmieri's counsel did discuss it at oral argument *in response to questions posed from the bench.* Accordingly, Judge Hutchinson does not reach or decide the issue.

arms Curios & Relics List" conflict with § 922(*o*). Section 922(a)(4) provides that:

(a) It shall be unlawful—

(4) for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, to transport in interstate or foreign commerce any destructive device, machinegun (as defined in section 5845 of the Internal Revenue Code of 1954), short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Secretary consistent with public safety and necessity....

18 U.S.C.A. § 922(a)(4) (West 1976). Section 922(b)(4) provides that:

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

(4) to any person any destructive device, machinegun (as defined in section 5845 of the Internal Revenue Code of 1954), short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Secretary consistent with public safety and necessity....

*Id.* § 922(b)(4). We find that § 922(a)(4) can be harmonized with § 922(*o*) because it envisions a licensed collector's ability to transport a machine gun that he or she lawfully possessed before May 19, 1986. *See id.* § 922(*o*)(2)(B). Similarly, § 922(b)(4) bars even licensed collectors from selling or delivering a machine gun unless specifically authorized by the Secretary. Although these statutes refer to the Secretary's power to approve the transport, sale and delivery of machine guns, we cannot imagine that the Secretary would specifically authorize activity that is prohibited in § 922(*o*). We thus conclude that §§ 924(a)(4) and 924(b)(4) are not irreconcilable with § 922(*o*).[11]

Section IV of the "Firearms Curios & Relics List" issued by the ATF is entitled, "National Firearms Act Weapons Classified As Curios or Relics Under 18 U.S.C. Chapter

44." The text directly preceding this list of weapons states that:

The Bureau has determined that the following National Firearms Act weapons are curios or relics as defined in 27 CFR 178.11 because of their dates of manufacture. These National Firearms Act weapons, classified as curios or relics, are still subject to all the controls under the National Firearms Act. However, *licensed collectors may acquire hold or dispose of them as curios or relics subject to the provisions of 18 U.S.C. Chapter 44 [which include 18 U.S.C. § 922(o)]* and 27 CFR Part 178. They are still "firearms" as defined in the National Firearms Act and Chapter 44 of Title 18, U.S.C.

(*Id.*) (emphasis added.) The weapon at issue in this case, a Chinese type 26 machine gun, appears on the section IV list. Although the introduction to the "Firearms Curios & Relics List" states that section IV weapons can be transferred to licensed collectors once registration requirements have been met, we hold that the prohibition against possessing or transferring a machine gun in 18 U.S.C. § 922(*o*) applies even when the weapon at issue is classified by the ATF as a curio or relic. A transfer of a section IV machine gun under the "Firearms Curios & Relics List" is statutorily permitted in a limited context, *see* 18 U.S.C. § 922(*o*)(2)(A), and the section IV list is potentially useful to those who lawfully possessed a machine gun before May 19, 1986. To the extent it contradicts 18 U.S.C. § 922(*o*), however, the statute trumps the ATF publication.

## VIII.

In sum, we find that the district court's jury instructions were sufficient to allow Palmieri to raise the defense that his sales to Lyman were in furtherance of his personal collection. The definition of a machine gun and the intent requirement for possession or transfer of a machine gun set forth in the jury charge similarly were not erroneous. Finally, the district court did not err in responding to a jury question regarding licens-

---

**11.** *Cf. United States v. Dalton,* 960 F.2d 121, 126 (10th Cir.1992) (holding that § 922(*o*) impliedly repealed statute barring possession of unregistered machine gun, 26 U.S.C. § 5861(d), where

weapon was possessed after § 922(*o*)'s effective date); *accord United States v. Kurt,* 988 F.2d 73, 75 (9th Cir.1993); *Staples,* 971 F.2d at 610–11.

es for selling firearms or in admitting lay opinion testimony, and its error in admitting hearsay testimony was harmless. The judgment of the district court will be affirmed.

COWEN, *Circuit Judge,* dissenting:

At stake in this case are the interpretation of an important statute and the liberty interest of defendant James Palmieri. In addition, the issues posed here for adjudication are of keen interest to many gun collectors. Although I recognize the compelling interest in strictly enforcing laws concerning ownership and dealing in firearms, I respectfully dissent, because I disagree with the majority with respect to the interpretation of both the gun collector exception under the Gun Control Act, *as amended,* 18 U.S.C. §§ 921–928 (1988 & Supp. IV 1992), and the jury charge by the district court. I also believe that even if the majority is correct with respect to statutory construction, due process requires that Count 2 against Palmieri be dismissed.

## I.

The central question Palmieri presents is whether the district court erred in refusing to allow him to present evidence of the firearm collector exception to the jury, and in refusing to fully instruct the jury on this theory. Accordingly, the court must determine whether there is a gun collector exception, and whether there was record evidence offered by Palmieri in support of his position. *See U.S. v. Paolello,* 951 F.2d 537, 539 (3d Cir.1991). If Palmieri put forth a gun collector defense, we must then examine the district court's instructions as a whole to assess whether they adequately presented to the jury the defense theory. *Id. See also United States v. Turley,* 891 F.2d 57, 62 (3d Cir.1989).

## II.

The escalating use of firearms in violent crimes led Congress to enact the Gun Control Act of 1968, *as amended,* 18 U.S.C. §§ 921–928 (the Act), in order to "strengthen Federal regulation of interstate firearms

traffic." H.R.Rep. No. 90–1577, 90th Cong., 2d Sess. 7 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4412. The Act prohibits a person from acting as a gun dealer without a dealer's license, 18 U.S.C. § 922(a)(1), and, *as amended,* bans possessing and transferring a machinegun,[1] 18 U.S.C. § 922(*o*). Palmieri claims that there is a valid gun collector exception under the Gun Control Act, and that he is such a licensed collector. He argues that he cannot be convicted of violating § 922(a)(1) if the jury accepts his position that he is a bona fide collector and not a dealer in firearms. He also argues that he cannot be convicted of violating § 922(*o*) if the machinegun at issue is a curio or relic as defined by the Secretary charged with enforcing the Gun Control Act.

## A.

The Gun Control Act focuses on the licensing and controlling of firearm dealers. *See United States v. Reminga,* 493 F.Supp. 1351, 1354 (W.D.Mich.1980). The Act makes it unlawful for any person "except a licensed importer, licensed manufacturer, or licensed dealer to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." 18 U.S.C. § 922(a)(1).

The Act defines "dealer" as "any person engaged in the business of selling firearms or ammunition at wholesale or retail." 18 U.S.C. § 921(a)(11). The Act further defines "engaged in the business," when applied to a dealer in firearms, as meaning

> a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

*Id.* § 921(a)(21)(C).

The phrase "with the principal objective of livelihood and profit" is defined to mean that

---

1. The preferred spelling is "machine gun." Because Congress used "machinegun," *see* 18 U.S.C. § 921(a)(23), I will also do so throughout this dissent.

the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided,* That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

*Id.* § 921(a)(22).

A fair reading of these provisions leads to the conclusion that to fall within the definition of "dealer," the seller of firearms must have dealt in firearms in substantial quantity and frequency, in sum, in a manner which can fairly be characterized as a regular course of trade or business.

### B.

Palmieri challenges his conviction on Count 1 by claiming that there is a gun collector exception to the ban on gun dealing without a dealer's license, and claims the benefit of the exception because he is such a collector. Accordingly, we must examine the status of a gun collector under the Gun Control Act.

When enacting the Gun Control Act of 1968, Congress did not intend to ban gun collecting as a hobby. Congress announced that "[g]un collectors could continue their hobby." H.R.Rep. No. 90–1577, *supra,* at 9, *reprinted in* 1968 U.S.C.C.A.N. at 4415. To make this possible, Congress essentially adopted three measures. The first made it

lawful for *anyone* to possess an antique firearm [2] by exempting antique firearms from the coverage of the Gun Control Act, *see* 18 U.S.C. § 921(a)(3). In effect, anyone can collect, possess and transfer antique firearms, even if such firearms fall within some other definition, such as that for machineguns.

Second, Congress established a collector exception under the Act which allows a collector to transact in certain firearms. The Act defines "collector" as "any person who acquires, holds, or disposes of firearms as curios or relics, as the Secretary shall by regulation define." 18 U.S.C. § 921(a)(13). Nowhere else in the Act did Congress specifically state what collectors (as opposed to licensed collectors who hold a federal collector's license) may or may not do. However, it is clear that Congress intended to allow collectors to buy and sell curios and relics [3] through *intrastate* transactions, so long as this activity stops at the level of a hobby and does not rise to that of a regular course of trade. The Act explicitly bans *interstate* transactions with certain exceptions for licensed dealers and licensed collectors, but does not ban *intrastate* transactions. *See* 18 U.S.C. § 922.

The legislative history and the statutory scheme support the conclusion that collectors can collect curios and relics within their home state. Congress declared that "[g]un collectors could continue their hobby." H.R.Rep. No. 90–1577, *supra,* at 9, *reprinted in* 1968 U.S.C.C.A.N. at 4415. The Act crim-

---

2. Antique firearms are defined as those manufactured in or before 1898. 18 U.S.C. § 921(a)(16).

3. The Secretary of Treasury has defined "curios and relics" as:

Firearms which are of special interest to collectors by reason of some quality other than is associated with firearms intended for sporting use or as offensive or defensive weapons. To be recognized as curios or relics, firearms must fall within one of the following categories:
(a) Firearms which were manufactured at least 50 years prior to the current date, but not including replicas thereof;
(b) Firearms which are certified by the curator of a municipal, State, or Federal museum which exhibits firearms to be curios or relics of museum interest; and

(c) Any other firearms which derive a substantial part of their monetary value from the fact that they are novel, rare, bizarre, or because of their association with some historical figure, period, or event. Proof of qualification of a particular firearm under this category may be established by evidence of present value and evidence that like firearms are not available except as collector's items, or that the value of like firearms available in ordinary commercial channels is substantially less.
27 C.F.R. § 178.11 (1993). More specifically, the Bureau of Alcohol, Tobacco and Firearms (ATF) publishes a list of curios and relics, naming specific firearms as curios and relics. *See* ATF, *Firearms Curios and Relics List (1972–1989),* ATF P. 5300.11 (1990 ed.), App. 618–27.

inalizes dealing in firearms as a regular course of trade without a dealer's license, rather than banning all sales. 18 U.S.C. § 922(a). The Act carves out a hobby exception to the "regular course of trade" definition by stating that occasional sales to enhance or liquidate a personal collection are not such a course of trade. *See* 18 U.S.C. § 921(a)(21)(C). This is one of several instances in which the Act specifically accommodates gun collectors.

This interpretation is also buttressed by the interpretation of the Bureau of Alcohol, Tobacco and Firearms (ATF), which is charged with administering the Gun Control Act through delegation by the Secretary, *see* 27 C.F.R. Pt. 178, who in turn receives authority from Congress, *see* 18 U.S.C. § 926. In an official publication, ATF explicitly states that "[a] person *need not* be federally licensed to collect curios or relics." ATF, *Firearms Curios and Relics List (1972–1989)*, ATF P. 5300.11 at 2 (1990 ed.) (hereinafter *ATF List*), App. at 620.

The third measure that Congress adopted was to establish a licensing system for gun collectors, and to authorize "licensed collectors" to engage in interstate transfers of curios and relics. Congress first defined "licensed collector" as any collector "licensed under the provisions of [the Gun Control Act]." 18 U.S.C. § 921(a)(13). Any person desiring to be a licensed collector may apply to the Secretary for such a license, which license only applies to transactions in curios and relics. 18 U.S.C. § 923(b).

A licensed collector presumably may engage in any activities that a non-licensed collector may conduct. In addition, a licensed collector may engage in interstate transactions in curios and relics under 18 U.S.C. § 922(a)(2) (shipping or transporting firearms into interstate or foreign commerce), § 922(a)(3) (receiving firearms from out-of-state), § 922(a)(4) (transporting destructive devices and machineguns into interstate or foreign commerce), and § 922(a)(5) (transferring firearms to a person from out-of-state). These are prohibited transactions for a collector who does not have a collector's license. For intrastate transactions, licensed collectors may also trade with other licensed

collectors, licensed dealers, licensed importers, and licensed manufacturers, without certain restrictions set forth in 18 U.S.C. § 922(b). A licensed collector can also sell or deliver curio machineguns · to a person through intrastate transactions if the Secretary so authorizes. *Id.* § 922(b)(4).

The regulation promulgated by the Secretary, who administers the Gun Control Act, succinctly summarizes the privileges of a licensed collector:

> [A collector's] license shall, subject to the provisions of the Act and other applicable provisions of law, entitle the licensee to transport, ship, receive, and acquire curios and relics in interstate or foreign commerce, and to make disposition of curios and relics in interstate or foreign commerce, to any other person licensed under the provisions of this part, for the period stated on the license.

27 C.F.R. § 178.41(c) (1993).

The statutory provisions, regulations and legislative history clearly indicate that the collector and licensed collector exceptions are written into and pervade the Gun Control Act. They apply when curios and relics are the subject of the transaction, so long as the collector's activities do not rise to a level that requires further licensing under the Act.

### · C.

The collector exception to the prohibition against acting as a gun dealer without a proper license under 18 U.S.C. § 922(a)(1) is not absolute. If a collector has engaged in a substantial quantity of transactions in curios and relics, he may be deemed a dealer, who must obtain a dealer's license.

Considered as a whole, the three measures discussed above unquestionably lead to the conclusion that a non-licensed collector may collect curios and relics and conduct transactions in firearms that are listed as curios and relics by the Secretary with a person from the collector's home state, without running afoul of 18 U.S.C. § 922(a)(1), if such transactions do not amount to a regular course of trade. ·A licensed collector is permitted to do everything that a non-licensed collector can and, in addition, to engage in interstate

transactions in curios and relics, so long as the transactions do not amount to a regular course of trade. If the jury finds that an individual is merely a collector, or a licensed collector, such a person may not be convicted of acting as a dealer without a license.

Although neither the statutory provisions nor the regulations that specifically address the status of a collector explicitly state the number of transactions a collector or a licensed collector may engage in without crossing the line from gun collector to gun dealer, it would be inappropriate to contend that dealing in curios and relics is completely exempt from the prohibition against gun dealing without a license. The Act does not contain an explicit and complete exemption for curios and relics like the complete exemption for antique firearms. Congress intended to permit gun collecting as a hobby rather than a large growth industry. Indeed, the explicit statutory exception to the regular course of trade definition permits only occasional sales for the enhancement or liquidation of personal collections. *See* 18 U.S.C. § 921(a)(21)(C). In other words, a collector, if engaging in numerous transactions, can cross the line and become a dealer. The Secretary's regulation makes this clear:

A collector's license does not authorize the collector to engage in a business required to be licensed under the Act. . . . There-

fore, if the acquisitions and dispositions of curios and relics by a collector bring the collector within the definition of a manufacturer, importer, or dealer[,] he shall qualify as such.

27 C.F.R. § 178.41(d) (1993). The change of status from a collector to a dealer is one of quantity and degree. Having a collector's license does not necessarily preclude one from being deemed a dealer without a dealer's license.

Accordingly, the theory of a firearm collector or licensed collector exception to 18 U.S.C. § 922(a)(1) is legally sound. This is so even though a collector is not necessarily completely exempt from § 922(a)(1). There may be situations where a jury may properly conclude that a person with a collector's license is actually a dealer without a dealer's license.

## D.

Palmieri was convicted on Count 2 for possessing and transferring a machinegun. The machinegun in question was listed by ATF in its own official publication as a curio or relic. This conviction cannot stand if the collector or licensed collector exception applies to the prohibition against possessing and transferring machineguns under 18 U.S.C. § 922(o).[4] This section states:

4. Judge Hutchinson declines to join Part VII of Judge Nygaard's opinion. Part VII of Judge Nygaard's opinion is therefore that of his own alone, not that of the court. Judge Hutchinson, however, concurs in the judgment affirming the district court's decision on the ground that Palmieri waived his argument on the invalidity of Count 2. See Maj.Op. at 1274 n. 10. I respectfully disagree with this waiver theory.

First, I believe the issue is *fairly* raised by Palmieri. Although he has not done so in the precise wording or analysis that I employ, he contends that his collector's license authorized him to sell all the guns at issue in this case and that the machinegun was not a machinegun within the meaning of § 922(o) and therefore he had no requisite intent to violate that provision. Brief for Appellant at 26–27. Moreover, at oral argument counsel for Palmieri specifically requested the court direct that the district court dismiss Count 2.

Secondly, the issue is in essence whether it is a crime to sell the machinegun at issue. When the sale is not a crime, a defendant simply cannot be convicted for conduct that is not criminal. This

goes to the sufficiency of the indictment. There is no waiver as to such a question. *See Menna v. New York*, 423 U.S. 61, 62 & n. 2, 96 S.Ct. 241, 242 & n. 2, 46 L.Ed.2d 195 (1975) (per curiam). Menna pleaded guilty to a charge, but he subsequently appealed the conviction on the ground that the indictment was invalid because it was barred by the guarantee against double jeopardy. *Id.* at 61, 96 S.Ct. at 241. The state contended that Menna waived his objections to the charge by virtue of his guilty plea. *Id.* In a per curiam opinion, the Supreme Court rejected this argument flatly:

Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty.

*Id.* at 62, 96 S.Ct. at 242. In a footnote, the Court stated that "a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute." *Id.* at 62 n. 2, 96 S.Ct. 242 n. 2.

(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

18 U.S.C. § 922(*o*). This provision was added to the Gun Control Act in 1986, *see* Pub.L. 99–308, § 102(9), 100 Stat. 452–53, in recognition that machineguns had frequently been "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime," H.R.Rep. No. 99–495, 99th Cong., 2d Sess. 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1330.

Obviously the prohibition under § 922(*o*) does not depend upon the number of transactions made; it is a complete ban if it applies. The clear language of § 922(*o*) states that it is unlawful for any person to possess or transfer a machinegun unless such possession or transfer is made to or by or "under the authority" of the United States, § 922(*o* )(2)(A), or the machinegun was lawfully possessed *before the effective date of the section*, § 922(*o*)(2)(B).

There is an interface between § 922(*o*) and §§ 921(a)(13) and 926. Certain machineguns within the meaning of § 922(*o*) can be listed as curios and relics available for gun collecting by the Secretary under §§ 921(a)(13), 926. Read in the context of the collector or licensed collector exception that pervades the Act, the term "machinegun" in § 922(*o*) must be considered to have a built-in exception so as to read "such term does not include curios and relics." This interpretation comports with the general statutory scheme of the Gun Control Act to afford an avenue for gun collectors to continue their hobby of collecting curios and relics. This reading is in accordance with statutory provisions that *specifically* authorize or permit the Secretary to authorize a licensed collector to transact in machineguns. *See* 18 U.S.C. § 922(a)(4), (b)(4).

In addition, the interpretation of the Secretary, who is authorized to administer the Act, lends support to this construction. Under such authority, the Secretary has promulgated regulations defining the term "curios and relics", *see* 27 C.F.R. § 178.11, and published through ATF a list of firearms that are curios and relics. Subsequent to the addition of § 922(*o*) in 1986, the Secretary has continued to classify many machineguns as curios and relics and placed them in Section IV of that list. *See ATF List, supra,* at 27 *et seq.;* App. at 626–27. Clearly ATF considers these machineguns, which it has classified as curios or relics, as not being within the general prohibition under § 922(*o*). Thus these firearms can be pos-

This rule equally applies to the federal government. If my analysis is correct, Count 2 is an invalid charge that the government may not constitutionally prosecute. Therefore, Palmieri's alleged silence does not waive his claim that Count 2 was invalid.

Finally, as an appellate court, we have the power to adjudicate an issue even if not raised or briefed. "In exceptional circumstances, *especially in criminal cases,* appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) (emphasis added). The case

*sub judice* is a criminal case and the invalidity of Count 2 is an issue that we should decide.

We have stated that "[e]xceptional circumstances have been recognized when the public interest requires that the issue be heard or when manifest injustice would result from the failure to consider the new issue." *Altman v. Altman,* 653 F.2d 755, 758 (3d Cir.1981). Public interest requires that we decide this issue because the statute touches an important aspect of our life and concerns the liberty interest of many gun collectors. The statute was recently enacted, and thus cries out for clarification. Manifest injustice would result from our failure to consider the issue. If my analysis is correct, Palmieri, for one, will stay in jail for committing no crime. The United States attorneys may use our decision to indict more people similarly situated.

sessed and transferred by collectors. In the introduction to the curios and relics list, ATF specifically addresses the transfer requirements for the machineguns contained in Section IV. It states that "[o]nce the registration requirements [under the National Firearms Act] have been met, transfer may be made intrastate or interstate to licensed collectors on AFT Form 4." *Id.* at 3; App. at 621.[5]

Section 922(*o*) is susceptible of an interpretation more sweeping than the construction set forth above. This broad interpretation would hold that the prohibition is absolute and thus even a collector or licensed collector would be prohibited from possessing or transferring a machinegun although such a firearm is classified as a curio or relic by the Secretary, if the collector cannot claim any specific exceptions contained in § 922(*o*)(2)(A) or (B). The specific statutory exceptions contained in § 922(*o*) do not apply to a normal collector or licensed collector. Fairly read, the exception in section 922(*o*)(2)(A) applies only to the United States or the states and their political subdivisions and agents. The "under the authority" language does not appear to include the licensing system. *See United States v. Warner,* 5 F.3d 1378, 1381 (10th Cir.1993) (§ 922(*o*)(2)(A) permits only possession of machineguns by federal or state agents acting in an official capacity), *cert. denied,* —— U.S. ——, 114 S.Ct. 1090, 127 L.Ed.2d 405 (1994). Section 922(*o*)(2)(B) relates only to the time of initial possession.[6] Therefore, the argument runs, there is no collector or licensed collector exception expressly written or fairly inferred in § 922(*o*). This is the interpretation argued by the government and what Judge Nygaard adopts.

So construed, § 922(*o*) conflicts with the general scheme that Congress enacted to make it possible for collectors to collect curios and relics, including machineguns, if they are classified as curios and relics by the Secretary. Such a broad reading of § 922(*o*) would require concluding that when adding § 922(*o*) to the Gun Control Act, Congress impliedly repealed the general gun collection scheme to the extent that the law then in place allowed machineguns to be collected as curios and relics.

In fact, such a broad reading necessitates an implied repeal of not only the general gun collecting scheme, but also two subsections specifically dealing with machineguns, 18 U.S.C. § 922(a)(4), (b)(4). With the general qualification that they can only conduct transactions in curios and relics, *see* § 923(b), licensed collectors are specifically authorized to transport machineguns in interstate and foreign commerce, § 922(a)(4), and to buy and sell machineguns within a state if the Secretary so authorizes, § 922(b)(4). ATF has classified many machineguns as curios and relics which gun collectors may acquire and dispose of in an appropriate transaction. *See ATF List, supra,* at 29, App. 626.

Judge Nygaard attempts to harmonize his reading of § 922(*o*) with § 922(a)(4), (b)(4) by stating that "[§ 922(a)(4) ] envisions a licensed collector's ability to transport a machine gun that he or she lawfully possessed before May 19, 1986 [the effective date of § 922(*o*) ]," Maj.Op. at 1274–75, and that "we cannot imagine that the Secretary would spe-

---

**5.** The ATF pursuant to its authority has removed certain antique firearms from the coverage of both the National Firearms Act and the Gun Control Act, and listed those items in Section IIIA of the ATF list. The fact that the machinegun at issue in this case does not fall within the category of weapons removed from the National Firearms Act does not affect Palmieri's claim. First, the National Firearms Act requires primarily that owners register their firearms and pay a tax on them. It is different from the Gun Control Act. Furthermore, those firearms removed from the National Firearms Act constitute Section IIIA, which is only part of the ATF curios and relics list. More specifically, this section contains a list of antiques, which technically are not "curios and relics," as defined by ATF, *see* App. at 625. Even though the exemption accorded an antique is broader than that accorded a curio, the fact that the machinegun at issue in this case does not fall within the antique category does not affect its curio status. The machinegun is within another part (Section IV) of the curios and relics list.

**6.** This exception appears to apply only to those who lawfully possessed a machinegun before the effective date. It does not seem to apply to collectors who did not own any machineguns as of that day.

cifically authorize activity that is prohibited in § 922(*o* )," *id.* This attempt fails.

With respect to § 922(a)(4), Judge Nygaard does not ask whether a private citizen can receive (or possess) a machinegun transported to him by an owner who possessed it before May 19, 1986. Under Judge Nygaard's reading of § 922(*o*), private possession and transfer of machineguns are categorically banned if the possession did not take place before May 19, 1986. After this day, no private person may buy or receive a machinegun from an owner who possessed it before this day although the latter may sell it. An owner would therefore not be able to transport the machineguns (which he possessed before that day) into interstate commerce for the purpose of transferring it to another private citizen because the latter would not be able to receive it. Perhaps Judge Nygaard envisions that a machinegun placed in the stream of commerce stays in the interstate transportation line forever, without reaching a destination. Accordingly, Judge Nygaard's reading of the interplay between § 922(*o*) and § 922(a)(4) reaches a result which is totally unacceptable.

With respect to § 922(b)(4), the Secretary has specifically authorized the machinegun at issue in this case to be available for possession and transfer by placing it in his official publication, the ATF curios and relics list, and by stating that it can be transferred, so long as the licensed collector complies with the registration requirements, "either intrastate or interstate to licensed collectors on ATF Form 4." *ATF List, supra,* at 3; App. at 621. This authorization was not "imagination," as Judge Nygaard intimates, but was published for the express and specific purpose of giving guidance to private gun collectors. Even though this is not an individualized authorization, it is a specific authorization for a class of citizens—the licensed collectors. Obviously, the Secretary construed the Gun Control Act as authorizing him to do so. Judge Nygaard contends that what the Secretary did was prohibited by § 922(*o*). However, because the statutory provisions are confusing and ambiguous, the Secretary is entitled to deference. *See infra* at 1284 (discussing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

Judge Nygaard's reading of § 922(*o*) also conflicts with the last paragraph of § 922(b), which I shall term "trading between federal licensees provision." Section 922(b) first places certain restrictions on federal licensees when they deal with non-licensees. *See* § 922(b)(1) (minimum age limit), (b)(2) (compliance with state law), (b)(3) (no local sale to out-of-state persons), (b)(4) (specific authorization of the Secretary required). The last paragraph of § 922(b) states that these restrictions "shall not apply to transactions between licensed importers, licensed manufacturers, licensed dealers, and licensed collectors. Paragraph [ (b)(4) ] shall not apply to a sale or delivery to any research organization designated by the Secretary." § 922(b). Obviously, this "trading between licensees provision" allows federal licensees to trade curio machineguns between themselves and with designated research organizations.

While it is true that § 922(*o*)(2)(A) permits an owner to transfer a machinegun to a federal or state instrumentality, § 922(a)(4) cannot be limited to transporting a machinegun to such an entity. Section 922(a)(4) permits transporting machineguns for the purpose of engaging in commerce. The language states that federal licensees may "transport [a machinegun] in interstate or foreign commerce." § 922(a)(4). Such language defies any attempt to read it restrictively because even if one might try to equate the term "transport in interstate commerce" with "transport to a federal or state instrumentality," no one would say that "transport in foreign commerce" also means "transport to a federal or state instrumentality." "Foreign commerce" means foreign commerce. Neither can § 922(b)(4) be limited to sales to governmental instrumentalities because the Secretary specifically authorized transfers to be made to other "licensed collectors." *ATF List, supra,* at 3; App. at 621. Nor can the "trading between federal licensees provision" be so limited. This provision permits trades between all federal licensees, private or otherwise.

The broad interpretation espoused by Judge Nygaard may also conflict with the

statutory exemption of antique firearms from the Act. *See* 18 U.S.C. § 921(a)(3), (a)(16). The Gun Control Act exempts antique firearms from its coverage not by making an explicit separate exemption, but by exempting them from the definition of "firearm" in § 921(a)(3). But antique firearms are not specifically exempted from the definition of "machinegun." Thus one may argue that, if an antique is also a machinegun, under the broad, absolutist interpretation of § 922(*o*), one cannot legally possess that antique machinegun, if he had not legally possessed it before § 922(*o*) went into effect, because § 922(*o*) does not contain a specific exemption for such an antique firearm.

Reading § 922(*o*) as a broad prohibition applicable to collectors and licensed collectors dealing in curio and relic machineguns conflicts significantly with other provisions of the Gun Control Act. Faced with a choice, we should choose a reading of § 922(*o*) that permits a collector or licensed collector exception. Several factors militate in favor of this interpretation. First, § 922(*o*) as an amendment to the Gun Control Act must be construed with the Act as a whole rather than in isolation. "Statutory construction is a holistic endeavor ... and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter." *United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., Inc.,* —— U.S. ——, ——, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (internal quotation marks and citations omitted). Put another way, " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " *Id.* (quoting *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849)). Thus, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." 2A Norman J. Singer, *Sutherland Stat. Const.*

§ 46.06, at 119–20 (5th ed. 1992) (citations omitted).

If a holistic consideration of the statutory context does not reveal Congress' intent to provide an absolute and total ban, we need not accord such a reading to § 922(*o*). Congress did not indicate, either in statutory language or legislative history, an intent to repeal or modify other provisions of the Gun Control Act when adding § 922(*o*). Rather, it only aimed to curb the use of machineguns by "racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime." H.R.Rep. No. 99–495, *supra,* at 4, *reprinted in* 1986 U.S.C.C.A.N. at 1330.

Second, "[s]tatutes for the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible." 2B Singer, *supra,* § 51.02, at 122. One cardinal rule of statutory construction is that "repeals by implication are not favored." *Morton v. Mancari,* 417 U.S. 535, 549–50, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974) (internal quotation marks and citations omitted). An implied repeal construction is permitted only when the seemingly conflicting statutes are absolutely irreconcilable. *Id.* at 550, 94 S.Ct. at 2482. *See also Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984). When confronted with seemingly inconsistent statutory provisions, we have a "duty to construe the statutes in such a way to give effect to both, if possible." *United States v. Bruno,* 897 F.2d 691, 695 (3d Cir.1990). When statutory provisions are capable of co-existence, "it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton,* 417 U.S. at 551, 94 S.Ct. at 2483.

The gun collector exception and § 922(*o*) are not irreconcilable because § 922(*o*) and the seemingly conflicting sections of the Gun Control Act can co-exist if we recognize that Congress intended it to be lawful for collectors to possess and transfer machineguns that are curios and relics.[7] The collector

---

7. Some courts have considered § 922(*o*) and 26 U.S.C. § 5861 irreconcilable. *See, e.g., United States v. Dalton,* 960 F.2d 121, 126 (10 Cir.1992) (§ 922(*o*) impliedly repealed I.R.C. § 5861(d) and (e), part of the National Firearms Act requir-

ing registration of machineguns because § 922(*o*) makes it impossible for anyone who purchases a machinegun after 1986 to comply with § 5861), *cert. denied,* —— U.S. ——, 114 S.Ct. 253, 126 L.Ed.2d 205 (1993); *but see United States v.*

exception is an exception to the general prohibition against machinegun possession and transfer. This is analogous to the situation in *Morton,* where the Supreme Court held that "[a] provision aimed at furthering Indian self-government by according an employment preference within the [Bureau of Indian Affairs] for qualified members of the governed group can readily co-exist with a general rule prohibiting employment discrimination on the basis of race." 417 U.S. at 550, 94 S.Ct. at 2482.

Nor is there any indication, not to mention any "clearly expressed congressional intention," *id.* at 551, 94 S.Ct. at 2483, of a repeal of the gun collection scheme or the specific sections that authorize licensed collectors to conduct transactions in curio machineguns. Congress never stated in the statute amending the Gun Control Act that the existing gun collecting scheme would be repealed, nor does the legislative history reflect any such intent. The pervading theme of the Gun Control Act is that gun aficionados be allowed to collect curios and relics including curio machineguns. When adding § 922(*o*), Congress did not specifically restrict the ability of licensed collectors to collect curios and relics that are also machineguns and to transport them into interstate or foreign commerce under § 922(a)(4). Nor did Congress restrict the Secretary's authority under 18 U.S.C. §§ 921(a)(13), 926 to classify machineguns as curios and relics or under § 922(b)(4) to authorize sales and delivery of machineguns. Indeed, when analyzing section by section the 1986 amendments to the Gun Control Act, Congress specifically summarized § 922(a)(4) and (b)(4) and mentioned machineguns, without noting any effect that § 922(*o*) would have on § 922(a)(4) and (b)(4). *See* H.R.Rep. No. 99–495, *supra,* at 22, *reprinted in* 1986 U.S.C.C.A.N. at 1348. Accordingly, it is improbable that Congress impliedly repealed, without indicating its intent to do so, the gun collecting scheme with respect to curio machineguns, when such a

repeal would eliminate several sections pertaining to collecting machineguns as curios and relics from the Gun Control Act, which sections have been in existence since 1968.

Third, because of the ambiguities surrounding the meaning of the term "machinegun" and "curios and relics," we should defer, under the holding of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to the interpretation of ATF, the administrative agency charged with administering the Gun Control Act. *Chevron* instructs us that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute," *id.* at 843, 104 S.Ct. at 2782, and that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844, 104 S.Ct. at 2782. Congress explicitly authorized the Secretary to define curios or relics so that a collector may acquire or dispose of them. 18 U.S.C. § 921(a)(13). ATF has denominated certain machineguns as curios and relics, and specifically advised that they may be possessed and transferred by a collector under the Act. *See ATF List, supra,* at 3, 29–30, App. at 621, 626–27. *See also supra* footnote 2. Such an interpretation no doubt more than meets the deferential reasonableness test under *Chevron.* We should not substitute our statutory construction for the inherently legal and practical interpretation of ATF.

Finally, construing the term "machinegun" in § 922(*o*) as excluding curios and relics comports with the tradition of courts to interpret terms shrouded in ambiguities derived from outside the particular statutory provision flexibly in order to give effect to the intent of the authors of a statute. Courts have not rigidly adhered to the literal terms

*Staples,* 971 F.2d 608, 610–11 (10th Cir.1992) (distinguishing *Dalton* because the machinegun at issue was purchased before § 922(*o*) went into effect), *cert. granted,* —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993); *United States v. Kurt,* 988 F.2d 73, 76 (9th Cir.1993) (§ 922(*o*) does not completely repeal I.R.C. § 5861(d) be-

cause if the machineguns were lawfully possessed before 1986, the defendant can meet the registration requirements). These cases concern the validity of the registration requirement after the enactment of § 922(*o*), and do not address the issue presented in this case.

of explicit language when there is an ambiguity external to that language under review and when the particular context militates for a flexible interpretation. *See, e.g., Johnson v. Transportation Agency of Santa Clara County, Cal.,* 480 U.S. 616, 627, 107 S.Ct. 1442, 1449, 94 L.Ed.2d 615 (1987) (analyzing affirmative action plan under the standard announced in *Weber, infra* ); *United Steelworkers of Am. v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979) (interpreting the Civil Rights Act of 1964 "against the background of the legislative history of Title VII and the historical context from which the Act arose"); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 418, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978) (rejecting a "mechanical construction" of § 706(k) of Title VII of the Civil Rights Act of 1964); *cf. In re House Bill No. 1291,* 178 Mass. 605, 60 N.E. 129 (Mass.1901) (interpreting flexibly the "written vote" requirement in the Constitution of Massachusetts as permitting use of voting machines). *See also* Richard A. Posner, *Problems of Jurisprudence* 262–69 (1990) (explaining the fallacies of the plain-meaning rule and criticizing rigid statutory interpretation).

For the foregoing reasons, we should regard each of the sections of the Gun Control Act as effective and recognize the gun collector exception to § 922(*o* ). This interpretation gives full effect to the Gun Control Act, accords with legislative history, and respects the interpretation of the administrative agency charged with enforcing the specific law under review.

### III.

The second task is to examine the record to determine whether it sufficiently supports Palmieri's defense that he fell within the collector exception to § 922(a)(1) and § 922(*o* ).[8] In so doing, we must consider the record as a whole. *See generally U.S. v. Paolello,* 951 F.2d 537, 539 (3d Cir.1991).

With respect to Count 1, Palmieri attempted to show that he is merely a collector, making only occasional transactions in curios and relics. It is undisputed that Palmieri has a collector's license. However, as discussed above, possession of such a collector's license is not dispositive of the question whether Palmieri fell within the collector exception to § 922(a)(1). He must further prove that the firearms he bought and sold were curios and relics and that the quantity of his transactions did not make him a dealer. The record indicates that the district court precluded Palmieri from fully presenting his collector exception theory at the trial.

Palmieri has a colorable claim that he was only a collector rather than a dealer. Palmieri served in the armed forces in the early 1950's and became interested in firearms. Since then and for about twenty-seven years, he had been collecting firearms "because of the historical value of [the] military items, foreign and domestic." App. at 368. Palmieri received a collector's license from the

---

**8.** In his brief, Palmieri asserts the gun collector exception as a defense to the charge under § 922(a)(1). With respect to the charge under § 922(*o*), his argument is different. Here, he claims that he could not be convicted of violating § 922(*o*) because the machinegun at issue is a curio or relic. This argument goes to an element of the offense.

If the claim relates to a defense, the government is not required to prove its existence or absence. Rather, the law may require the defendant to prove the defense by a preponderance of the evidence. *Martin v. Ohio,* 480 U.S. 228, 235–36, 107 S.Ct. 1098, 1103, 94 L.Ed.2d 267 (1987); *Patterson v. New York,* 432 U.S. 197, 205–212, 97 S.Ct. 2319, 2324–28, 53 L.Ed.2d 281 (1977). On the other hand, if the issue in dispute goes to the elements of the offense, or if it bears some necessary relationship to an element of the offense, *see Mullaney v. Wilbur,* 421 U.S. 684, 705–07, 95 S.Ct. 1881, 1893, 44 L.Ed.2d 508 (1975) (Rehnquist, J., concurring), the government bears the burden of proof to establish its existence or absence, *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).

My analysis of the statutory provisions indicates that the gun collector exception goes to an element of the offense in each count. As to § 922(a)(1), the gun collector exception addresses the quantity of transactions and, thus, the "regular course of trade" element. The collector exception as applied to § 922(*o*) addresses what is a machinegun within the meaning of that section. Therefore, the government should bear the burden of proving that Palmieri is not a collector as to both counts.

However, the distinction between who bears the burden of proof is not critical in this appeal because Palmieri was precluded from presenting his claimed "defense."

appropriate authority to become a "licensed collector," and maintained this status properly.

Nor does the government dispute that the guns that Palmieri sold to Lyman were all curios and relics.[9] The circumstances of how he became interested in guns and the relatively few transactions he made—three transactions with a total of five items over a span of eight months between October 1991 and May 1992, to be exact—present a sufficient jury question of whether he was merely a collector or, as the government argues, a *de facto* dealer engaging in a regular course of trade in gun dealing.

With respect to Count 2, the charge of violating § 922(*o*), the only issue was whether the machinegun at issue was a curio or relic because § 922(*o*) does not contain a quantity component. The government did not, and could not, dispute that the machinegun at issue is a curio or relic. *See ATF List, supra,* at 30, App. 627. The record clearly supports Palmieri's claim of collector exception to Count Two.

In sum, the record indicates that there is sufficient evidence to present a question for the jury to determine whether Palmieri was a dealer in firearms, or merely a collector, in Count 1. On Count 2, the charge cannot be established as a matter of law since the only machinegun at issue is classified by the government itself as transferrable as a curio or relic.

## IV.

Having concluded that the gun collector exception is a valid legal theory under the applicable law, and there is evidence in the record which supports the Palmieri's position that he was a gun collector and not a dealer, I next examine the jury charge as a whole to see whether it adequately embodied the theory of Palmieri's defense. *See Paolello,* 951 F.2d at 543.

The only portion in the jury charge that addressed the collector exception to § 922(a)(1) was its paraphrasing of the statutory definition of "engaged in the business." There the district court stated:

> The term "engaged in the business" means a person who devotes time, attention and labor to dealing in firearms as a regular course of trade or business with the principle objective of livelihood and profit through the repetitive purchase and resale of firearms, but the term does not include a person who makes occasional sales, exchanges or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or a part of his personal collection of firearms.

App. at 522. Obviously, this part of the instruction tracked the language of the definition in 18 U.S.C. § 921(a)(21)(C). It was not incorrect, but it did not provide sufficient guidance to the jury on the collector exception to § 922(a)(1) since it failed to adequately address the distinction in terms of the quantity of transactions between a collector and a dealer.

While one might argue that the above instruction gave the jury the alternative to find Palmieri a collector and not a dealer, other portions of the charge eliminated that alternative. This was accomplished by what I believe to be misstatements of the law on the status of a licensed collector. For example, the court instructed the jury:

> In this case, you have heard testimony that during the time period covered by the indictment, the defendant, James Palmieri, was a licensed firearms collector. I instruct you as a matter of law, that the collector's license possessed by the defendant did not authorize him to sell any firearms, even firearms that have been classified as curios or relics. I further instruct you that what the defendant believed his collector's license authorized him to do is not an issue in this case, it is therefore,[sic] irrelevant to your determination of the charges in this case.

App. at 523. Even by the majority's admission, this portion of the jury charge is "potentially misleading." Op. at 1269. I believe

---

9. These firearms at issue were manufactured before or during World War II and thus are within the definition of curios and relics under 27 C.F.R. § 178.11 (firearms must be fifty years old in order to be recognized as curios and relics).

it is more than that. As discussed above, a gun collector does not need a collector's license to buy and sell gun curios and relics within his home state, but only a licensed collector can buy and sell curios and relics in interstate transactions. The jury charge misstated the law with respect to interstate transactions because a collector's license does authorize interstate sales. More importantly, this portion of the charge instructed the jury that a collector cannot lawfully make *any* sales, with or without a license. This is, again, clearly incorrect, since even without a gun collector's license a collector is permitted to make certain intrastate transactions. This part of the jury instruction completely precluded the jury from considering whether Palmieri fell within the gun collector exception when he sold the guns at issue in this case.

The response of the district court to the jury's last question before the verdict was returned was an even more serious misstatement of the law, and a substantial source for confusion. The jury asked: "Do you need a license to sell firearms under all circumstances?" App. at 539. The question indicates that the jury was puzzled by the difference in quantity between the number of transactions that a collector can engage in and the number of transactions which would make one a dealer in firearms. The term "license" in the question from the jury clearly refers to the firearms dealer's license.

The proper answer to the jury question should have been a resounding "no," because, without a gun dealer's license, a collector without a federal collector's license is permitted to make certain intrastate sales; a collector with a federal collector's license may, in addition, make certain interstate sales. The district court, however, responded:

> [T]he best answer I can give you to this is that that is not your concern as a jury. You do not need to know everything about under what circumstances a person could or could not do this. . . . I refer you to the instruction that you received . . . which is I instructed you as a matter of law that the collector's license possessed by the defen-

dant did not authorize him to sell any firearms. . . .

App. at 541–42.

Not only did the district court repeat its incorrect instruction on the status of the licensed gun collector, it also miscomprehended the importance of a correct answer to the jurors who were confused as to whether Palmieri was guilty merely because he sold guns. In its response to the question of the jury, the district court instructed that the jury "need not know everything about under what circumstances a person could or could not do." *Id.* The jury was never told that an individual does not need a dealer's license to sell firearms under *all* circumstances. If the jury was properly instructed, it would have been equipped to make a judgment on whether Palmieri was a dealer or merely a collector. As a dealer, he would have been required to be licensed as a dealer, while as a collector, he did not need a dealer's license for intrastate sales. If it had been properly instructed, the jury may well have concluded the limited transactions that Palmieri made were not sufficient to bring him within the definition of a firearm dealer, particularly since the record reflects the activities of an infrequent seller who sold five curio firearms in three transactions over a period of eight months between October 1991 and May 1992, and with only one buyer involved. Because the jury charge did not reflect the gun collector defense to Count 1, we should reverse the conviction on Count 1, and remand for a new trial.

With respect to the charge in Count 2, alleging a violation of § 922(*o*), the jury instruction never mentioned any gun collector exception to such a charge. *See* App. at 524–25. The district court essentially instructed the jury that in order to convict Palmieri it must find beyond a reasonable doubt merely that "the defendant possessed and transferred a machinegun," *id.* at 524, and that "the defendant acted knowingly," *id.* The charge to the jury was improper since it failed to set forth any directions or instructions on the gun collector exception to § 922(*o*). Ordinarily, this would require a remand for a new trial. However, because the gun collector exception to § 922(*o*) does

not depend on the number of transactions, and since the record is clear that the only machinegun at issue is, in fact, a curio or relic, the government cannot prove Count 2 as a matter of law. Thus, we should direct the district court to dismiss Count 2 rather than remand for a new trial.

## V.

Judge Nygaard interprets § 922(*o*) as an absolute ban on possession and transfer of any machinegun, even a machinegun that is a curio or relic, with the limited exceptions provided by the explicit language of § 922(*o*)(2)(A) and (B) which are not relevant in this case. It therefore becomes necessary to address the serious due process problem posed in this case by the ATF official position that machineguns which are classified as curios or relics may be possessed and transferred. On the one hand, the Secretary as administrator, and therefore an official expositor of the Gun Control Act, specifically advises collectors they can buy and sell certain machineguns if they are on the official list of curios and relics. On the other hand, the United States Attorney can, and in this case did, prosecute anyone for possessing *any* machinegun, even if it is on the official ATF list of curios and relics. This state of affairs raises serious questions of notice and fairness. Even if we have the power to read § 922(*o*) broader than Congress intended, as Judge Nygaard does, we must nevertheless reverse Palmieri's conviction on Count 2.

Although a mistake of law is generally not an excuse to a criminal charge, the law recognizes the government should not prosecute a citizen who is misled by an official interpreter of the law. In *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), the Supreme Court held that the state may not convict a person for refusing to answer questions of a state investigating commission when that person relied upon assurances of the commission that state law afforded him a privilege to refuse to answer (although such privilege did not in fact exist). *Id.* at 425–26, 79 S.Ct. at 1259–60. To sustain such a conviction, the Court reasoned, "would be to sanction an indefensible sort of entrapment

by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him." *Id.* at 426, 79 S.Ct. at 1260. Several years later, the Supreme Court again held that defendants may not be convicted for demonstrating near a courthouse when the police chief in the presence of the Sheriff and the Mayor told them it was permissible to do so. *Cox v. Louisiana*, 379 U.S. 559, 568–72, 85 S.Ct. 476, 482–84, 13 L.Ed.2d 487 (1965).

These cases demonstrate that when a defendant is misled by assurances of an official interpreter of the law that the conduct in dispute is permissible, he cannot be subsequently prosecuted for that same conduct. Otherwise, the law would sanction indefensible entrapment by the government. This rule takes on greater importance when the law at issue is as complex as the Gun Control Act.

Palmieri is clearly within the protection of the *Raley* rule. ATF has published a list of curios and relics embodying its official interpretation of the interface between "machinegun" and "curios and relics," and specifically stated that these machinegun curios can be transferred. *See ATF List, supra*, at 3, 29; App. at 621, 626. There is no dispute that the machinegun at issue in this case is contained in that list. Palmieri, like all others, was advised by the Secretary's official publication that he can possess and transfer the machinegun at issue in this case. His conviction on Count 2 for possessing and transferring that machinegun must be set aside.

Finally, before Judge Nygaard made known his holding, it was by no means clear that Palmieri's reading of the statute (permitting him to possess and to transfer a machinegun that is a curio or relic on the ATF list) was a mistaken interpretation of the law. By reason of §§ 921(a)(13), 922(a)(4) and (b)(4), Palmieri could reasonably conclude that the Gun Control Act permitted him to possess and transfer the machinegun at issue. The reasonableness of this conclusion is verified by the very same interpretation by ATF. At most, this reasonable interpretation conflicted with § 922(*o*). Where a statute authorizing criminal sanctions "gives conflicting commands,"

*United States v. Cardiff,* 344 U.S. 174, 176, 73 S.Ct. 189, 190, 97 L.Ed. 200 (1952), the government cannot enforce the statute by punishing a citizen whose interpretation was reasonable. *Id.*

In *Cardiff,* the defendant was convicted of violating the then existing § 301(f) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 331(f), which prohibited the refusal to permit entry or inspection as authorized by § 374. Section 374 in turn authorized federal officers or employees "after first making request and obtaining permission of the owner" of a plant to enter or inspect the establishment at reasonable times. *Id.* at 174–75, 73 S.Ct. at 189. The Supreme Court recognized that the statutory provisions could have reasonably been interpreted as "prohibit[ing] the refusal to permit inspection only if permission has been previously granted." *Id.* at 176, 73 S.Ct. at 190. The Court also recognized that the government might have been correct in arguing that the statute should be read as "prohibiting a refusal to permit entry or inspection at any reasonable time." *Id.* The Court concluded, the statute "makes inspection dependent on consent and makes refusal to allow inspection a crime." *Id.* The Court ruled that such a statute cannot be enforced because enforcement "would be making an act criminal without fair and effective notice." *Id.* The provisions of the Gun Control Act with respect to machinegun possession and transfer are similar to those addressed in *Cardiff* in that both are susceptible of conflicting, yet reasonable, interpretations. Therefore, § 922(*o*) should not be enforced.

Judge Nygaard attempts to remedy this constitutional problem by asserting that the Secretary did not state that the machinegun at issue is transferrable. The reason Judge Nygaard gives is that ATF indicated that the machineguns in the list can only be transferred subject to the § 922(*o*) absolute ban on machinegun possession and transfer save when a machinegun was possessed before May 19, 1986. This is entirely unpersuasive.

Quoting a paragraph from the ATF curios and relics list, Judge Nygaard states that licensed collectors are permitted only to "acquire[,] hold or dispose of them [the weapons listed in Section IV] as curios or relics sub-

ject to the provisions of 18 U.S.C. Chapter 44 [which include 18 U.S.C. § 922(*o*)] and 27 CFR part 178." Maj.Op. at 1275 ("[which include 18 U.S.C. § 922(*o*)]" was added by Judge Nygaard). However, the sentence in the ATF list immediately following the quoted language states that "[t]hey are still 'firearms' as defined in the National Firearms Act and Chapter 44 of Title 18, U.S.C." *ATF List, supra,* at 29, App. at 626. Thus the "subject to" language must be read as primarily concerning the "firearm" status of the curios and relics so that the collectors are on notice that if they trade curios as a regular course of business without a dealer's license, they may be violating the Gun Control Act, *see* 27 C.F.R. § 178.41(d) (1993) (specifically cautioning collectors to obtain further licenses if their activities amount to a regular course of trade), and that they may need to comply with the registration and taxation requirements under the National Firearms Act.

Reading the "subject to" language as reinstating the § 922(*o*) absolute machinegun prohibition renders superfluous almost the whole Section IV of the ATF curios and relics list, which is itemized with machinegun curios and relics. We should not lightly assign such a purpose to the ATF, an expert administrative agency charged with administering the Gun Control Act.

Judge Nygaard contends that his reading of § 922(*o*) leaves Section IV of the ATF curios and relics list some use, asserting that this part of the list is "potentially useful to those who lawfully possessed a machine gun before May 19, 1986." Maj.Op. at 1275. I have pointed out that Judge Nygaard's reading of § 922(*o*) would ban a private citizen from receiving a machinegun after May 19, 1986. *See supra* at 1281. Thus, under Judge Nygaard's reading of § 922(*o*), Section IV of the ATF list could not be of any use at all so far as private transfers are concerned. No legal transaction could take place because even though one side of the transaction—the seller—could transfer a machinegun, the other side—the buyer—could not receive or possess it. But private transfers are exactly what the ATF authorized. See *ATF List, supra,* at 3; App. at 621.

The only use of Section IV of the curios and relics list, Judge Nygaard indicates, is that it permits a transfer to be made to a governmental instrumentality under § 922(*o*)(2)(A). *See* Maj.Op. at 1275 (citing to § 922(*o*)(2)(A)). Assuming that Judge Nygaard is correct, that part of the list is still useless, because under § 922(*o*)(2)(A) a machinegun need not be a curio or relic (that is, being listed in Section IV of the list) to be eligible for transfer to a governmental agency. Any machinegun (antique, curio or brand new) may be transferred to the federal or state government under § 922(*o*)(2)(A). An expert agency such as the ATF probably would not have promulgated a list that does nothing.

By clear and unambiguous pronouncement, ATF has rejected the position espoused by Judge Nygaard. ATF specifically stated that "[o]nce the registration requirements have been met, transfer [of the curios and relics in Section IV] may be made either intrastate or interstate to *licensed collectors* on ATF Form 4." *ATF List, supra,* at 3; App. at 621 (emphasis added). It is well to emphasize that the ATF specifically permits transfers to be made to "licensed collectors" who are private citizens. This language clearly rebuts Judge Nygaard's contention that the Section IV was meant to permit transfers to governmental instrumentalities and that § 922(*o*) categorically bans all private possession and transfer of machineguns if an owner did not possess them before May 19, 1986. Section 922(*o*) as construed by Judge Nygaard would ban these collectors from receiving any machineguns after May 19, 1986. Many of the firearms in Section IV are machineguns, such as the machinegun at issue in this case. This statement clearly refutes any assertion that ATF considered the "absolute" ban under § 922(*o*) applied to machineguns which are curios and relics.

Because of the constitutional complications, we are instructed to construe a statute in such a way, if possible, so as to avoid a difficult constitutional question. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("where an otherwise acceptable con-struction of a statute would raise serious constitutional problems, the Court will con-strue the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"). Judge Nygaard does not heed this admonition. Instead, he reads § 922(*o*) as an absolute ban and thus implicitly concludes that the Secretary through ATF has exceeded its authority in listing the machineguns as curios. Judge Nygaard thus states that "to the extent that [Section IV of the ATF curios and relics list] contradicts 18 U.S.C. § 922(*o*), however, the statute trumps the ATF publication." Maj. Op. at 1275.

Even if Judge Nygaard is correct, case law as analyzed above mandates that we dismiss Count 2 (the machinegun charge) since Pal-mieri was misled by ATF. Under the hold-ing of *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), *Cox v. Louisi-ana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and *United States v. Cardiff,* 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200 (1952), Palmieri must be set free on Count 2 if he was misled by the ATF official interpretation of the Gun Control Act or if the statutory provisions gave conflicting commands. There is no doubt that the provisions of the Gun Control Act are susceptible of conflicting interpretation and that Palmieri was misled by the official interpretation of the Secre-tary—the administrator of the Act. Palmieri was charged with possessing and transfer-ring a machinegun that ATF has recognized it is permissible to possess and transfer.

A fundamental element of due process is fair notice. "[A] fair warning should be giv-en to the world in language that the common world will understand, of what the law in-tends to do if a certain line is passed." *McBoyle v. United States,* 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931). Born of the concern for fair notice, the venerable rule of lenity "demand[s] resolution of ambiguities in criminal statutes in favor of the defen-dant." *Hughey v. United States,* 495 U.S. 411, 422, 110 S.Ct. 1979, 1985, 109 L.Ed.2d 408 (1990). *See also United States v. Gran-derson,* —— U.S. ——, ——, 114 S.Ct. 1259, 1267–69, 127 L.Ed.2d 611 (U.S.) ("In [those] circumstances—where text, structure, and

history fail to establish that the Government's position is unambiguously correct—we apply the rule of lenity and resolve the ambiguity in Granderson's favor."). This rule takes on greater importance when complex statutes such as the Gun Control Act and the National Firearms Act are involved. *See United States v. Thompson/Center Arms Co.,* — U.S. —, — – — (plurality op.) & —, 112 S.Ct. 2102, 2109–10 (plurality op.) & 2112, 119 L.Ed.2d 308 (Scalia, J., concurring) (1992) (applying the rule of lenity in construing National Firearms Act in a civil case when the government attempted to tax the defendant). This rule requires that Judge Nygaard's interpretation not be applied to Palmieri, even though it may bind the whole world in a future case. Judge Nygaard today disregards this rule, and does so without discussion.[10]

With Judge Nygaard's reading of § 922(*o* ), gun collectors and museums, who currently possess or transfer curio or relic machineguns as a hobby or for historical and educational purposes, are at risk. They most likely will not be in a position to claim the explicit exceptions to the absolute machinegun ban as provided in § 922(*o* )(2A)(A) and (B). In order to avoid any further misleading of those who are gun collectors, the court should explicitly nullify the part of Section IV of the ATF curios and relics list which contains machineguns, and thwart the ATF from placing that part of the list in public circulation.

### VI.

To support Palmieri's conviction, the government argues that Palmieri also violated 27 C.F.R. § 178.94 and the registration requirements of the National Firearms Act. What bearing any violation by Palmieri of 27 C.F.R. § 178.94 or the National Firearms Act has on the charges that Palmieri was convicted of is not explained by the government. Nor could any attempted explanation be made since Palmieri was charged solely with violating § 922(a)(1) and (*o* ). He was

not charged with violating either 27 C.F.R. § 178.94 or the National Firearms Act. Whether Palmieri violated these other statutes and regulations is not relevant to whether he violated § 922(a)(1) and (*o* ). Palmieri cannot be convicted of violating a statute because, presumably, he violated some other law unrelated to the charge before the court.

The record indicates that Palmieri may not be faultless. He may have violated other sections of the Gun Control Act, certain requirements with respect to registration and taxation under the National Firearms Act, as well as New Jersey gun control law. Perhaps Palmieri should have been charged with these violations. But he was not. The government may have chosen the wrong statute to prosecute a citizen. But we are not impanelled to correct a charging error by the government. We are required to determine if Palmieri is guilty as charged. Clearly, he is not.

### VII.

For the foregoing reasons, I dissent. I would reverse the conviction on both counts and remand the case for a new trial on Count 1 and direct that the district court dismiss Count 2.

### SUR PETITION FOR REHEARING

#### May 11, 1994

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ROTH and LEWIS, Circuit Judges.

The petition for rehearing filed by appellant in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges

---

**10.** As I pointed out in *supra* note 4, Judge Hutchinson does not join in Part VII of Judge Nygaard's opinion, but would affirm the judgment of the district court on a waiver theory. Judge Nygaard does not concur in this waiver theory.

Accordingly, the court's affirmance of Palmieri's conviction is the by-product of two different theories of two judges comprising the majority. This fact alone requires that we apply the rule of lenity in favor of Palmieri.

of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.