UNITED STATES of America,
Plaintiff–Appellee,

v.

Gilbert R. SYVERSON, Defendant–
Appellant.

No. 94–3755.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1995.

Decided July 19, 1996.

Lisa T. Warwick (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff-Appellee.

John S. Schiro (argued), Schiro & Ward, Milwaukee, WI, for Defendant-Appellant.

Before CUMMINGS, CUDAHY, and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

This case principally involves questions about what is required to prove *mens rea* for violations of certain federal criminal statutes that regulate the possession of firearms, specifically machine guns and silencers. The government alleged that Gilbert Syverson violated these statutes by knowingly possessing several questionable items: a metal cylinder that could slightly diminish the report of a pistol, a variety of unassembled gun parts, a couple of semi-automatic rifles and instructions for using the parts to convert a semi-automatic rifle into a machine gun. Syverson admits possession of the items, but he contends that the government should have proven more than it did prove about his mental state with respect to them. He also argues that his trial counsel was unconstitu-

tionally ineffective for not more actively advocating this view of the evidence regarding his mental state. For the reasons set forth below, we affirm the judgment of the district court.

## I.

Syverson's trouble began when he made some harassing phone calls to his former girlfriend. She complained about these calls to the police who went to Syverson's apartment to investigate. Their investigation persuaded them to take Syverson into custody. While preparing to leave with the officers, Syverson rifled through his belongings in search of his keys. As he did so, the police noticed some gun parts. After this discovery, they searched Syverson's apartment with his consent, uncovering semiautomatic weapons, more gun components and videotapes that illustrated a method for using those gun components to convert a semiautomatic weapon into a machine gun. They also found a .22 caliber pistol with a homemade metal cylinder attached to the end of the barrel. The cylinder was not identified by any serial number, nor was it registered. After conducting some tests on the cylinder, government officials concluded that it was a silencer.

These discoveries led the government to charge Syverson with violating federal firearms law. Specifically the government alleged that Syverson had violated 18 U.S.C. § 922(o), which provides that it is unlawful for any person to knowingly possess machine guns or their constituent parts, whether or not those parts are assembled. *See United States v. Ross*, 40 F.3d 144, 146 (7th Cir. 1994) (defining the *mens rea* element for § 922(o)). The government also alleged that, by possessing the homemade silencer, Syverson had violated several statutes, namely 26 U.S.C. §§ 5841, 5845(a), 5861(d), 5861(i) and 5871, which make it illegal to possess a silencer that does not have a serial number and has not been registered in the National Firearms Registration and Transfer Record.

At trial, the government introduced evidence designed to prove that Syverson had possessed semi-automatic weapons, the gun components and the metal cylinder; and it showed the videotape that demonstrated the method for turning the semi-automatic weapons into machine guns. It also introduced evidence showing that Syverson had knowingly possessed the cylinder and that it could be used to reduce the report of a pistol from 151 decibels to 144.5.

Syverson's case consisted largely of his own testimony, in which he denied that he intended to assemble the parts into a machine gun or that he knew that the cylinder worked as a silencer. He asserted that he had, at one time, thought about making a machine gun; but he claimed that he had given up the idea when he learned from the Bureau of Alcohol, Tobacco and Firearms that such a project would be illegal. One witness corroborated this testimony by recalling an earlier conversation in which Syverson had reflected this state of mind. Syverson also testified that he had designed and made the cylinder himself, as a prototype for a muzzle break, a device that reduces the recoil of a rifle. Another witness testified, in effect, that the cylinder was not a silencer because a person with average hearing could not hear the reduction in sound that it effected.

The district court instructed the jury as to the elements of the offenses regarding the machine gun and the silencer. The jury convicted Syverson on all five counts.

## II.

Syverson challenges his convictions on the machine gun charges by arguing that the government did not have sufficient evidence to prove that he had a culpable mental state. Specifically, he contends that the elements of § 922(o), as defined in the statute itself and in the jury instructions, required the government to prove that he intended to use the unassembled gun parts to convert his semiautomatic weapons into machine guns. And he maintains that the government did not introduce evidence on this point.

In ordinary circumstances, appellants face formidable obstacles in showing that a judgment against them is invalid for want of sufficient evidence. *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir.), *cert. denied,* —

U.S. ——, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996). In this case, Syverson faces even greater obstacles because his trial counsel failed to move for an acquittal at any of the appropriate times for such a motion. Consequently, he is deemed to have waived any appellate arguments about the sufficiency of the evidence. This waiver lowers our standard of review to plain error with respect to this issue. Syverson must show that the evidence supporting his conviction was so insufficient that his convictions amounted to a manifest miscarriage of justice. *See United States v. Archambault*, 62 F.3d 995, 998 (7th Cir.1995).

According to 18 U.S.C. § 921(a)(23), the meaning of the term "machine gun" in § 922(*o*) comes from 26 U.S.C. § 5845(b). Section 5845(b) defines "machine gun" as a completely assembled gun that fires automatically or as a combination of parts that are "designed and intended[ ] for use in converting a weapon into a machine gun."

■ As the government and the district court have read this combination of statutes, the government could prove that Syverson violated § 922(*o*) by showing: that he knowingly possessed a "combination of parts," that the manufacturer of those parts had designed and intended them for use in converting a weapon into a machine gun and that he knew of this use for the parts. *See Ross*, 40 F.3d at 146. Syverson does not dispute that the government introduced sufficient evidence to prove these three elements.

■ But Syverson's interpretation of the relevant statutes leads him to argue that the government must prove a fourth element: that he intended to use the parts to make a machine gun. He does not complain that the jury instructions failed to inform the jury about this requirement; he seems to believe that the instructions as given were adequate and that they were misunderstood or misapplied. In his view, when the statute refers to parts that are "designed and intended" to convert a weapon into a machine gun, the phrase, "designed and intended," cannot refer solely to the manufacturer's conception of the parts. He believes that, if the phrase did, the words "designed" and "intended" would have essentially the same meaning and

would therefore be redundant. Syverson thus argues that the two words in the phrase must each refer to different things, relying on the well-established principle that statutory construction abhors a redundancy. *See Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1272 (7th Cir.), *cert. denied*, 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). He maintains that "designed" refers to the manufacturer's conception of the parts and that "intended" refers to the defendant's thoughts about the parts.

After examining the context for the language that defines "machine gun," we must reject Syverson's interpretation of the statute. As we noted, the language upon which Syverson focuses comes from 26 U.S.C. § 5845(b). This section defines "machine gun" for the purposes of statutes that regulate the possession and use of weapons. This definition has evolved over time. Originally, "machine gun" referred only to fully assembled machine guns. In 1968, the Gun Control Act expanded the definition to include "any combination of parts from which a machine gun can be assembled." Finally, in 1986, Congress recognized that so-called "machine gun conversion kits" posed a threat to the effective enforcement of the regulation of machine guns. These kits permitted individuals to convert a semi-automatic rifle into a machine gun. Congress sought to subject these conversion kits to the regulations on machine guns by adding to the definition of machine gun in § 5845. Consequently, Congress amended § 5845(b) again, providing, in effect, that a collection of parts "designed and intended" to convert a weapon into a machine gun was the functional equivalent of a machine gun. Through this evolution of the statute, Congress has sought to identify all of the things that can constitute a machine gun. *See United States v. Evans*, 712 F.Supp. 1435, 1438 (D.Mont.1989) (discussing the development of § 5845); *see also* H.Rep. No. 945, 99th Cong., 2d Sess. 28, *reprinted in* 1986 U.S.C.A.A.N. 1326, 1354.

Accepting Syverson's argument would require us to hold that § 5845(b) does more than define all of the things that can be called "machine guns;" we would have to hold that it also defines the mental states required

for certain substantive offenses. As we have seen from its evolution, however, § 5845(b) has nothing to do with defining culpable mental states. Its sole purpose is to define things. Therefore, within the context of § 5845(b), the only referent for the adjectives "designed and intended" is the manufacturer of the parts, not the accused who is charged with the unlawful use of those parts. When § 922(o) interpolates the term "machine gun" from § 5845(b), it cannot change the referents for the phrase "designed and intended." To do so would be to change the meaning of "machine gun," and the statutory scheme of which § 922(o) is a part does not permit such a change. According to the plain language of § 921(a)(23), § 922(o) does not give meaning to "machine gun;" it borrows the meaning for that term from § 5845(b). Therefore, Syverson's reading of the statutes is untenable.

We should note that, in any event, the trial record does contain circumstantial evidence showing his intentions with respect to the conversion kit. By showing that Syverson knowingly possessed semi-automatic rifles, that he knowingly possessed a conversion kit and that he possessed instructions for converting the rifles into machine guns, the government has made a substantial showing about Syverson's intention to make a machine gun. A jury could certainly infer that Syverson possessed all of these things because he intended to use them for an illegal purpose; and Syverson's own denials of this intention do not necessarily make this inference unreasonable. The reasonableness of this inference only makes it more obvious that there was no miscarriage of justice with regard to the sufficiency of the evidence on the machine gun counts.

### III.

Syverson makes two related challenges to his convictions on the counts pertaining to his possession of a silencer. He first argues that the district court's jury instructions did not properly identify the elements of these offenses; and he argues that the evidence relating to these offenses was insufficient to convict him even if the elements were not as he had argued.

### A.

■ The government charged Syverson with two offenses arising from his possession of the cylinder. First, it alleged that he violated 26 U.S.C. §§ 5841, 5845(a), 5861(d) and 5871, which prohibit the possession of an unregistered firearm. Second, it alleged that he violated 26 U.S.C. §§ 5861(i) and 5871, which make it unlawful for any person to possess a firearm that does not have a serial number. According to 18 U.S.C. § 921(a)(3), a silencer is included in the definition of a firearm; and, under 18 U.S.C. § 921(a)(24), a silencer is "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed and intended for use in assembling or fabricating a firearm silencer ... and any part intended only for use in such assembly or fabrication." In instructing the jury, the district court employed an abbreviated version of the definition of "silencer" in § 921(a)(24), noting that a silencer is "any device for silencing, muffling, or diminishing the report of a portable firearm."

■ As he did with the machine gun charge, Syverson argues that the government should have been required to prove more than it did prove. Syverson derives this argument from *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), in which the Supreme Court discussed the *mens rea* requirements of § 5861(d), one of the statutes under which he was charged. That statute does not explicitly provide a *mens rea* requirement for any of the crimes that it defines, but the Supreme Court held that it did not thereby create strict liability crimes. In *Staples*, the Court interpolated knowledge as the *mens rea* requirement. *Id.* at ——, 114 S.Ct. at 1804. It held that the government could obtain convictions under § 5861(d) by proving that the defendant knew of the features of the firearm that brought it within the regulation of the statute. *Id.*

Syverson contends that *Staples* applies to both § 5861(d) and § 5861(i) and that it requires the government to prove that he knew that the cylinder actually reduced the report

of a gun. This argument depends upon the premise that § 921(a)(24) provides that "silencing, muffling or diminishing" is one of the features of silencers. In other words, Syverson presumes that § 921(a)(24) only regulates silencers that actually work.

■ This presumption is, however, contrary to the plain language of the statute. Syverson correctly points out that *Staples* controls the definition of the elements of the offenses in this case. Under *Staples,* the government can prove that a defendant knowingly possessed a silencer by proving that the defendant knowingly possessed an item and that he knew that the item had the features of a silencer. But Syverson incorrectly identifies the salient features of silencers. As noted above, the statute defines a silencer as "any device *for* silencing, muffling, or diminishing" the report of a firearm. Moreover, the statutory text notes that such a device can include a combination of parts designed or intended for use in assembling a silencer; it can even include a single part that is intended only for use in making a silencer. Thus, the statute does not limit the definition of a silencer to "a device *that* silences, muffles, or diminishes." This is a significant difference. By the language of the definition, Congress has indicated that it intends to regulate all devices purporting to serve as silencers, not just those devices that actually work to silence firearms. Therefore, a device can be a silencer for the purposes of § 921(a)(24) even if it does not actually silence.

Consequently, Syverson is mistaken in arguing that *Staples* required the government to prove that his cylinder actually muffled the report of a gun and that he knew that the cylinder had this effect. Under *Staples,* the government had to prove that the cylinder was made for the purpose of silencing a firearm, not that this purpose was realized. The definition of "silencer" in the district court's jury instructions adequately conveyed this requirement.

### B.

Regardless of the preceding argument, Syverson accepts the fact that the government had to prove that his cylinder purported to be a silencer. He argues that he should not have been convicted because the record contained no evidence that would make this proof. As we have noted, we will consider this argument according to the plain error standard because Syverson did not move for an acquittal during the trial.

Because Syverson was the designer and manufacturer of the cylinder, his intentions determine whether it purported to be a silencer. In his trial testimony, Syverson professed his intentions, insisting that he had designed and manufactured the cylinder to be a muzzle break. A muzzle break is a device that reduces the recoil of a gun by permitting the dispersion of the hot gasses that emerge from the end of the gun barrel when a round is fired and force the barrel upward. He explained that his daughter had wanted a muzzle break so that she could more accurately fire her rifle; and he claimed that the cylinder on the pistol was a prototype of the muzzle break that he planned to manufacture for her. His daughter's testimony corroborated this account. In Syverson's view this is the only evidence in the record that reflects on his intentions. This evidence alone does not, of course, prove that the cylinder was a device for silencing, muffling or diminishing the report of a firearm.

Contrary to Syverson's characterization of the record, there was evidence showing that he intended the cylinder to be a silencer. Part of that evidence was negative, casting doubt on his professed intentions. A government expert testified that muzzle breaks usually have slots cut into them; these slots are the means by which muzzle breaks disperse the hot gases expelled from a gun barrel. Syverson's cylinder had no slots. According to this expert's testimony, Syverson's cylinder would not have done much, if anything, to reduce the recoil of a firearm. In addition, the government offered evidence that the cylinder did reduce the report of a pistol, albeit slightly. This evidence would be enough to allow a reasonable jury to infer that Syverson's description of the cylinder was not credible and that it was made to be a silencer, even if it was not particularly well

made. This was more than enough evidence to support Syverson's conviction.

## IV.

 Syverson's final challenge to his conviction depends upon his claim that he received ineffective assistance of counsel at trial. He raises this argument for the first time on appeal. Ordinarily, we will not take jurisdiction of a claim of ineffective assistance unless the appellant has, as is usually not the case, raised the issue at trial. *United States v. Langer,* 962 F.2d 592, 597 (7th Cir.1992). We can, however, take jurisdiction of such claims when they rest on the trial record alone and when the defendant's attorney on appeal is not the same person who represented him at trial. *United States v. Boyles,* 57 F.3d 535, 550 (7th Cir.1995). Syverson's claim meets these conditions.

The Supreme Court has held that a defendant may sustain a claim of ineffective assistance of counsel by showing that his or her counsel's performance was deficient and that this deficient performance prejudiced his or her case. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Syverson finds deficient performance in his trial counsel's failure to move for a judgment of acquittal based on the sufficiency of the evidence arguments he makes on appeal. As Syverson sees it, criminal defendants have nothing to lose and everything to gain by moving for a judgment of acquittal. Given the relative costs and benefits of such a motion, he believes that every competent defense lawyer would always make such a motion and that his trial counsel's failure to do so is the sign of incompetence, and therefore, deficient performance. His argument with respect to the prejudice element is very sketchy. It consists entirely of the assertion that this deficient performance prejudiced him because it led to an outcome for his trial that violates principles of fairness and justice.

Putting aside any question about whether Syverson's trial counsel performed deficiently, we conclude that Syverson did not suffer any prejudice from counsel's failure to move for an acquittal. Because the evidence against Syverson was sufficient to warrant his conviction, no prejudice could arise from trial counsel's failure to challenge the sufficiency of that evidence through a motion for acquittal. *See United States v. Pedigo,* 12 F.3d 618, 623 (7th Cir.1993).

The judgment of the district court is

AFFIRMED.