RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0379p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee,*

    *v.*

TREVOR A. CARTER,

     *Defendant-Appellant.*

No. 04-4304

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 03-00092—Thomas M. Rose, District Judge.

Argued: June 8, 2006

Decided and Filed: October 17, 2006

Before: SILER, DAUGHTREY, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Thomas W. Anderson, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Dayton, Ohio, for Appellant. Robert C. Bartlemay Sr., ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee. **ON BRIEF:** Thomas W. Anderson, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Dayton, Ohio, for Appellant. Robert C. Bartlemay Sr., ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee.

_____

## OPINION

_____

PER CURIAM. The defendant, Trevor Carter, was charged in a three-count indictment with illegal possession of the receiver of a Sten MKII machine gun and various other parts "designed and intended for use in converting a weapon into a machinegun," in violation of 18 U.S.C. § 922(o) and 26 U.S.C. § 5845(b); illegal possession of an unregistered silencer, in violation of 26 U.S.C. §§ 5861(d) and 5871; and illegal possession of a silencer without a serial number, in violation of 26 U.S.C. §§ 5861(i) and 5871. Convicted by a jury on all three counts, Carter now appeals, contending: (1) that the district court erred in failing to dismiss Count 1 prior to trial because it failed to allege that he possessed a trigger mechanism for the machine gun; (2) that the evidence at trial was legally insufficient because there was no proof that Carter possessed a trigger mechanism; (3)

1

that the jury instructions regarding the definitions of "trigger" and of "readily restorable" were faulty; and (4) that the evidence related to possession of the silencer in Counts 2 and 3 was insufficient because there was no evidence that the silencer was operable.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The charges in this case stem from the stop of an SUV driven by defendant Carter after officers of the Eaton (Ohio) Police Department observed him commit several traffic offenses. During the stop Carter tried to reach for a rifle and was removed from the vehicle by force. A search of the vehicle turned up a 25-20 caliber rifle with a scope, which was loaded with three rounds of ammunition and had the safety off; a .38 special hammerless revolver; a 12-gauge pump action shotgun; a .380 caliber pistol; and a night vision scope. With Carter in custody, police secured the consent of Carter's girlfriend to search the nearby house that she owned and that he had also been occupying. The search yielded several loaded firearms; some pills wrapped in aluminum foil; a pill bottle missing its label and containing five red capsules; a .22 caliber derringer style pistol modified for a silencer and what appeared to be a silencer being constructed; and a Sten Sub Machine Gun that was not completely assembled. The woman told police that Carter had been experimenting with constructing silencers and that he had a book on their manufacture.

Following his indictment on the charges involved here, the defendant filed a motion to dismiss the first count of the indictment because it did not mention a trigger mechanism among the parts he was alleged to have possessed. He argued that because the definition of "machinegun"[1] given at 26 U.S.C. § 5845 specifically includes a trigger, the indictment failed to state a charge as required by Federal Rule of Criminal Procedure 7(c)(1). Carter argued, in the alternative, that if the allegations in Count 1 were sufficient, then the statute itself was "unconstitutionally vague and overbroad as applied to [his] case." The district court held a pre-trial motion hearing and heard testimony from the government's firearm expert, Christopher Monturo, about the operation of the parts that had been discovered at the defendant's home. Monturo testified that the gun had fired in the manner of a machine gun when he used his finger as a trigger. The court subsequently denied the motion to dismiss on the defendant's claims based on sufficiency and overbreadth of the statute and deferred ruling on the vagueness claim until after trial.

At trial, one of the Eaton police officers who had been involved in the search of the defendant's residence testified that he had found a Sten machine gun, a manual for the Sten gun, and a handgun with a tube attached to the end of the barrel, surrounded by steel wool. He said that the items removed from the house had been turned over to the Miami Valley Regional Crime Laboratory for testing and examination. A second police officer testified that he had recovered a brass-colored cylinder that appeared to be a silencer. He described the cylinder as containing another tube that had holes in it, wrapped with steel wool, and noted that it had been attached to a pistol by means of threading when found.

Christopher Monturo, the expert from the crime laboratory, gave extensive testimony regarding the operation and use of the parts found. He indicated that the weapon that the police had recovered was a partially-assembled Sten machine gun that included a bolt, spring, end cap, magazine well, barrel, cocking handle, and main spring cap. According to Monturo, what the police had recovered was the center section or "receiver" of the gun, also called a "frame" because it is "the part of the firearm that holds everything together." He explained that the receiver had an area into which a magazine for holding multiple rounds of ammunition could be inserted and a space from which a cartridge could be thrown out of the gun after it was fired. He described it as a weapon that

---

[1]The United States Code uses the term "machinegun" as a noun in 26 U.S.C. § 5845 and elsewhere, but the spelling is not considered standard, although it is a correct spelling of the verb, as in "to machinegun." *See* Webster's Unabridged Dictionary 1151 (2nd ed. 1997).

"is designed, is capable of or is readily restorable to fire automatically, without manual reloading, more than [one] round with a single function of the trigger," and testified that it was complete but for a trigger mechanism. Monturo also explained that semi-automatic receivers and bolts are available for Sten guns but are designed differently from the one seized from the defendant, which could not be used as a semi-automatic receiver. After inserting a magazine with three rounds of ammunition, he said, he was able to make the gun fire all three rounds consecutively by pulling the bolt back and releasing it by hand. Finally, in regard to the Sten gun, Monturo testified that the absence of a magazine, stock, and ammunition did not keep it from being categorized a machine gun.

Monturo also testified about the brass cylinder that police had recovered. He first explained that a silencer works by slowing and cooling the gases emitted from the barrel of a gun when it is fired. He then indicated that the brass cylinder with a threaded end contained a ported tube that was surrounded by washers and steel wool and was "designed and intended for use in assembling or fabricating a device for silencing, muffling or diminishing the reporte [sic] of a portable firearm." He noted that the device recovered was not marked with a serial number. However, Monturo also testified that he had not tested the cylinder device because it "was not mounted securely [to the firearm]" and he "wasn't sure of the access being in line" and, therefore, did not want to risk damaging the evidence or injuring himself. On cross-examination, he conceded that it was not an "operable" silencer.

At the close of the government's case, Carter moved under Federal Rule of Criminal Procedure 29 for entry of a judgment of acquittal based on insufficiency of the evidence. Unsuccessful in securing a dismissal of the charges, he then testified in his own behalf, saying that he had ordered the Sten receiver through the mail and the remainder of the parts as a kit from a separate company. According to Carter, he had intended to build a semi-automatic by using a semi-automatic trigger assembly, which he ultimately never ordered. He also testified that he had not realized the gun would fire automatically and was "quite shocked" to learn that it had. He also said that the brass cylinder was an air compressor filter and that he had inserted the ported tube trying to make a "muzzle break." Finally, he testified that, while "just messing [a]round," he had fired a blank through the cylinder but did not fire a shot through it because he thought it would explode if he did.

At the close of his case, the defendant renewed his Rule 29 motion, but the court denied it. The jury returned a verdict of guilty on all three counts, and the district court subsequently sentenced the defendant to 30 months' imprisonment on each count, to run concurrently. This appeal followed.

## II. *DISCUSSION*

### A. Sufficiency of the Indictment

The defendant first challenges the district court's denial of his motion to dismiss the first count of the indictment for failure to state an offense, a decision that we review *de novo. United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir.1999). Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and give "the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

Count 1 of the indictment charged that the defendant "did knowingly and unlawfully possess the receiver of a Sten MKII machinegun, and a combination of parts designed and intended, for use in converting a weapon into a machinegun, to wit: the receiver, receiver tube, and bolt of a Sten MKII machinegun, which receiver and which combination of parts constitute a machinegun, as defined by . . . Section 5845(b), Title 26, United States Code." The defendant argues that because

he did not possess – and was not charged with possessing – a trigger mechanism, the parts in his possession did not constitute a machine gun within the meaning of 26 U.S.C. § 5845(b).

That statute provides:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). In arguing that possession of a trigger is essential to conviction under section 5845(b), Carter relies on the Tenth Circuit's somewhat convoluted opinion in *United States v. Wonschik*, 353 F.3d 1192 (10th Cir. 2004), in which that court suggested that the grammatical structure of the statute reincorporates the entire definition in the first sentence into the second sentence wherever the words "such weapon" or "machine gun" are used. *Id.* at 1198. Given this interpretation, the argument goes, the failure of Count 1 to specify possession of a trigger mechanism constitutes a fatal omission. The defendant also argues that because the frame or receiver of an automatic Sten gun is identical to that of a semi-automatic Sten gun, and the determinative distinction is the trigger mechanism, possession of the receiver alone cannot constitute possession of a machine gun. Finally, he asserts that construing the phrase "the frame or receiver of any such weapon" in the second sentence to constitute a machine gun would render the statute unconstitutionally vague.

Contrary to the Tenth Circuit's interpretation, most courts that have addressed the provision have interpreted it to include a total of four definitions of a "machinegun," *i.e.*, the initial definition in the first sentence followed in the second sentence by three independent, alternative definitions added by amendment to the statute in 1968. *See United States v. Williams*, 364 F.3d 556, 558 (4th Cir. 2004) ("The word 'and' used in the last sentence of section 5845 reflects a purpose to include three separate and individually sufficient categories of weapons within the definition of a machinegun . . . ."); *United States v. Palmieri*, 21 F.3d 1265, 1271 (3d Cir. 1994) ("[T]he plain language of the statute itself . . . provides that machinegun '*shall also include*' items A, items B and items C. This language . . . includes three new categories within the definition of machine gun.") (emphasis in original), *vacated and remanded on other grounds*, 513 U.S. 957 (1994); *Thompson/Center Arms Co. v. United States*, 924 F.2d 1041, 1046-47 (Fed. Cir. 1991) (ruling that 1968 amendments to machine gun definition added three new categories); *United States v. Bradley*, 892 F.2d 634, 636 (7th Cir. 1990) (listing the three additional categories).

Given this reading of the statute, we conclude that the district court's denial of the defendant's motion to dismiss the indictment in this case was proper. The indictment satisfied Federal Rule of Criminal Procedure 7(c)(1) in that it cited the law violated and set out "clearly and concisely" that the defendant was charged with possessing the frame or receiver of a machine gun and parts designed and intended for use in converting a weapon into a machine gun. The absence of an allegation that the defendant possessed a mechanical trigger is essentially irrelevant here, where testimony established that the weapon could actually be fired manually.

Nor do we find any merit to the defendant's claim that such an interpretation of the statute is improper because, so read, section 5845(b) would be unconstitutionally vague. The standard for determining vagueness in a criminal statute is "if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory

enforcement." *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990) (citing *Kolender v. Lawson*, 461 U.S. 352, 355 (1983)). We find no such risk here.

## B. Sufficiency of the Evidence

As a corollary to his argument concerning the validity of the first count of the indictment, the defendant claims that there was not sufficient evidence to support his conviction for violating section 5845(b) in the absence of proof that he possessed a trigger mechanism for the machine gun described in Count 1. In reviewing a claim that the evidence at trial was insufficient to sustain a conviction, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A reviewing court must "make all reasonable inferences and credibility choices in support of the jury's verdict." *United States v. Johnson*, 440 F.3d 832, 839 (6th Cir. 2006) (quoting *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990)).

As noted at length above, the proof in this case established that the weapon in question could be fired manually and without a mechanical trigger. We hold that this evidence was legally sufficient to support the defendant's conviction on Count 1 of the indictment.

## C. Jury Instructions

The defendant next challenges two components of the jury instructions. In the Sixth Circuit, there is a "high standard for reversal of a conviction on the grounds of improper instructions." *United States v. Sheffey*, 57 F.3d 1419, 1429 (6th Cir. 1995). "An appellate court must review jury instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision." *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993). Hence, we will reverse a judgment "only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Id.*

The defendant first challenges the district court's instruction regarding the definition of "trigger." The court instructed the jury as follows:

> [A] trigger is anything that . . . releases the bolt to cause the weapon to fire. A trigger may be either a traditional small projecting tongue in the firearm that, when pressed by the finger, actuates the mechanism that discharges the weapon, any mechanism used to initiate a firing sequence, or anything that serves as a stimulus and initiates or precipitates a reaction or series of reactions.

This instruction was undoubtedly informed by the testimony of the government's expert witness that although there was no mechanical trigger found with the receiver or among the other parts recovered, he nevertheless had been able to fire the gun in an automatic manner. The expert stated that

> . . . the Sten did not have a trigger mechanism. However, because it [had] an open bolt design, because the firearm will fire with the bolt slamming forward, I loaded [] a magazine with all three cartridges [and] inserted it into the firearm. Held the rear against my chest.

> Put the magazine in, held it at the magazine port, pulled the bolt back and released it. Upon releasing it the bolt would go forward [stripping] a cartridge off out of the magazine into the chamber and it would fire. Bolt would retract, come back again and fire and fire. It fired three shots consecutively.

The district court relied on two decisions for its instruction. In *United States v. Evans*, 978 F.2d 1112 (9th Cir. 1992), the Ninth Circuit ruled that the lower court's definition of a trigger as "anything that releases the bolt to cause . . . (the weapon) to fire" was "consistent with the language of [26 U.S.C. § 5845(b)] and with Congress's intent." 978 F.2d at 1113. Likewise, the reviewing court in *United States v. Fleischli*, 305 F.3d 643 (7th Cir. 2002), rejected the appellant's argument that an electronic switch did not meet the traditional definition of trigger and "join[ed its] sister circuits in holding that a trigger is a mechanism used to initiate a firing sequence." 305 F.3d at 655 (citing *Evans*, 978 F.2d at 1113-14 n.2, and *United States v. Jokel*, 969 F.2d 132, 135 (5th Cir.1992)).

The reasoning adopted by other circuits, as well as simple logic, compels the conclusion that the district court's instruction was proper and not an abuse of discretion. A trigger is generally "anything, as an act or event, that serves as a stimulus and initiates or precipitates a reaction." Webster's Unabridged Dictionary 2021 (2nd ed. 1997). Within the realm of firearms, it is commonly understood as "a small projecting tongue in a firearm that, when pressed by the finger, actuates the mechanism that discharges the weapon." *Id.* However, the latter definition is obviously a context-specific articulation of the former. According to the testimony of the government's expert, the manipulation of his hands on the assembled weapon initiated a reaction, namely the firing of the gun and two automatic successive firings. This manual manipulation constituted a trigger for purposes of the weapon's operation. The district court's "trigger" instruction to the jury was not an abuse of discretion.

The defendant's second argument regarding the jury instructions is that the district court improperly gave this definition of "readily restorable":

> If you find that the Defendant knowingly possessed a firearm that lacked a part or parts necessary to enable it to fire automatically more than one round without manual reloading with a single function of the trigger, and you further find that the missing part or parts were readily available on the open market, then you may find that the firearm is readily restorable to fire automatically more than one round without manual reloading with a single function of a trigger.

The defendant asserts that this "open market" construction of "readily restorable" expanded the definition to his prejudice by allowing the jury to consider whether a trigger mechanism was available on the open market.

In giving the jury this instruction, the district court relied on an unpublished decision from this court, *United States v. Cook*, No. 92-1467, 1993 WL 243823 (6th Cir. July 6, 1993). In *Cook*, the panel rejected the defendant's argument that he did not possess a machine gun because he did not have a piece known as an "autosear," based on testimony that it was not a part needed to convert the defendant's rifle to a fully automatic weapon and that "the [autosear] was easily obtainable from a gun parts dealer." 1993 WL 243823, at *4. The court concluded that whether the piece was needed or not, "a jury could have found that Cook possessed a machinegun within the statutory definition." *Id.* We have recently suggested in a published opinion that such availability is a factor to be considered in determining whether a weapon is "readily restorable" for purposes of section 5845(b). *See United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 441 F.3d 416, 422 (6th Cir. 2006).

But, we need not reach the appropriateness of the district court's construction of "readily restorable" in this case, because even if we were to hold that the instruction in question was improper, the error would have to be considered harmless. The jury did not need to find that either the receiver or the combination of parts in Count 1 were, or could readily be made, operable in order to convict Carter. The instruction defining "readily restorable" was simply not relevant to any material issue before the jury. Furthermore, the evidence that Carter possessed the receiver of a machinegun and "a combination of parts designed and intended, for use in converting a weapon into a machinegun,"

as alleged in Count 1, is compelling. Therefore, it is totally improbable that the instruction regarding the definition of "readily restorable" materially affected the verdict. *See U.S. v. Jamieson*, 427 F.3d 394, 416 (6th Cir 2005).

## D. Possession of a Silencer

Finally, the defendant argues that there was insufficient evidence to convict him on Counts 2 and 3 for possession of an unregistered silencer and possession of a silencer without a serial number, respectively, because there was no evidence that the silencer was operable or could readily be put into operating condition. The defendant points to the government expert's testimony that he did not know if the brass cylinder recovered by the police worked as a silencer. Finding no controlling decisions from this circuit, he points to an unpublished case from the Fifth Circuit that required the government to prove that the silencers at issue "could readily have been put into operating condition." *United States v. Taylor*, No. 03-10167, 2004 WL 1254204, at *2 (5th Cir. June 9, 2004), *vacated*, 543 U.S. 1108 (2005), *reinstated*, 409 F.3d 675 (5th Cir. 2005). In response, the government points to testimony from the expert that the device was designed and intended to be used as a silencer; from the defendant that he was interested in silencers and had researched how they work; from the defendant's neighbor that the defendant had told him he was trying to make a silencer; and from one of the officers that the defendant had stated that he had fired a blank through the cylinder and it "didn't work too well."

A silencer is defined by 18 U.S.C. § 921(a)(24) as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." The statute does not contain any indication that operability is a necessary component of a silencer. Indeed, the Seventh Circuit has issued two decisions indicating that the government need not prove operability in prosecutions under section 921(a)(24). *See United States v. Rogers*, 270 F.3d 1076, 1081 (7th Cir. 2001) (jury instruction that conviction depended not on whether screw-on tube actually worked as a silencer but on whether it was intended to work as a silencer "tracks the statutory definition")(dictum); *United States v. Syverson*, 90 F.3d 227, 232 (7th Cir. 1996) (rejecting appellants argument that statute only prohibits silencers that work as "contrary to the plain language of the statute . . . [which] defines a silencer as 'any device *for* silencing, muffling, or diminishing' the report of a firearm . . . [and] does not limit the definition of silencer to 'a device *that* silences, muffles, or diminishes'" (emphasis in original)).

We adopt the analysis of the Seventh Circuit. The language of the statute focuses on the intended application of a silencer, not its actual demonstrated operation. The defendant's position would be supported by the use of statutory language such as "is capable of silencing" or "that silences." But Congress did not use such wording. The word choice indicates a concern for the *purpose* of the mechanism, and the parts thereof, not the *function*. Given this understanding of the statute's language, a rational trier of fact could have found beyond a reasonable doubt that the defendant possessed such an instrument. Moreover, we reject the defendant's contention that the trial court erred in refusing to instruct the jury that the government was required to prove the operability of the silencer.

## III. *CONCLUSION*

For the reasons set out above, we AFFIRM the judgment of the district court.