**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 07a0523n.06
Filed: July 25, 2007
No. 05-3804

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff, Appellee*

                                On Appeal from the United States District
                                Court for the Southern District of Ohio

        v.

MARVIN BRACY
    *Defendant, Appellant*

_____/

**BEFORE: KENNEDY, GIBBONS, and McKEAGUE, Circuit Judges.**

**KENNEDY, Circuit Judge.** Marvin Bracy appeals his conviction under the False Claims Act, 18 U.S.C. § 287, and the False Statements Act, 18 U.S.C. § 1001. He argues that the district court improperly restricted his cross examination of a government witness and thus deprived him of due process. He also argues that the government did not produce sufficient evidence for a reasonable jury to convict him. We **AFFIRM**.

**BACKGROUND**

Bracy worked for the Department of Agriculture ("Department") for 17 years. JA at 38. During that time, he received numerous commendations from the Department and was never disciplined. JA at 38, 41-44. From 1990 to 1999, he traveled on Department business. Bracy estimates that he traveled 70 to 100 times during that time period, the frequency of his travel increasing with his experience. JA at 38. In 1995 or 1996, the Department instituted a new policy with regard to the calculation and reimbursement of travel expenses for its employees. JA at 40.

On October 10, 2002, the United States filed a fourteen-count indictment with the District Court for the Southern District of Ohio, which alleged that, from November of 1997 to March of 1999, Bracy submitted false information on seven separate travel vouchers – claiming reimbursement for expenses totaling approximately $3,000 incurred while traveling for the Department – in violation of both the False Claims Act ("FCA"), 18 U.S.C. § 287, and the False Statements Act ("FSA"), 18 U.S.C. § 1001.

The indictment alleged that Bracy essentially arbitraged the government reimbursement rates of alternate modes of transport to his benefit. Specifically, the government alleged that Bracy had used various forms of transportation – planes and rented automobiles – in his travels for the Department but, without fail, claimed that he had driven his personal vehicle.[1] Apparently, the government mileage rate provides the most generous reimbursement for travel on Department business travel to certain locations. Government negotiated rates on air travel and rental cars (with unlimited mileage) are cheaper, in some cases, than the amount the government pays its employees for the use of their personal vehicles. Bracy used that advantage.

In one example, Bracy traveled on Department business January 25-30 in 1998. The government presented evidence that Bracy rented a car and paid $158.59. The contract for the rental included unlimited mileage. Instead of filing a claim for reimbursement of the rental car expense, Bracy indicated on his travel voucher that he had driven 1,100 miles in his personal vehicle, which entitled him to a reimbursement of $341. Neither party indicates whether the government is willing to pay for fuel or other costs attendant to renting a car when an employee drives a rental vehicle nor

---

[1]Government witness Granger was asked at trial, "[D]id [ ] Bracy ever list a rental car, a plane or a train or another alternative form of transportation other than [his own vehicle]?" He replied, "He did not, sir. The documents do not show that." Trial Tr., vol. 3, 354, Jan. 28, 2004.

do they indicate, if that is so, what Bracy might have spent on fuel. Thus, there is no way for us to determine, for the curious mind, the exact excess that the Department paid (and that Bracy received) for this trip. The indictment alleges that he presented a claim, that he knew was false, for $341.

In another example, Bracy had Department business in St. Louis, MO from February 7-13, 1999 and in the state of Arkansas from February 15-20, 1999. He filed one voucher indicating that he traveled (in his own vehicle) from Athens, OH to St. Louis, MO and back; and also filed another voucher indicating he traveled (in his own vehicle) from Athens to Arkansas and back. His total mileage reimbursement claim from these trips was $923.24. Indictment Counts 9-12; JA at 6-9, *see also* JA at 69-75. The government presented evidence that Bracy instead flew from Columbus to St. Louis, rented a car and drove to Arkansas, drove back to St. Louis in the rented car, and flew back to Columbus at a total cost of $407.89. Once again, neither party indicates what additional costs, such as fuel, the Department would have reimbursed had Bracy been forthright in his report. The indictment alleges that he presented two claims, that he knew were false, for a total of $923.24.

The government presented evidence (including witness testimony and documents collected from credit card companies, rental car agencies, airlines, and the Department) to a jury, which found Bracy guilty on all fourteen counts. The district court sentenced Bracy to two years probation on all counts, to run concurrently, including three months of home confinement. It also ordered restitution of $2,933.67 and an assessment of $1,400.[2]

## ANALYSIS

---

[2]The Sentencing Guidelines Manual, 18 U.S.C. App. § 5E1.1(a)(2), provides that, "[i]n the case of an identifiable victim, the court shall . . . enter a restitution order for the full amount of the victim's loss." It further provides that a $100 special assessment "shall be imposed on a convicted defendant . . . if convicted of a felony." *Id.* at application note 2 (citing 18 U.S.C. § 3013). The $1,400 represents a special assessment of $100 for each count in the indictment.

**I. Meaningful Defense**

"[W]e review all challenges to district court evidentiary rulings, including constitutional challenges, under the abuse of discretion standard." *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006) *cert. denied*, 127 S. Ct. 1336 (Feb. 20, 2007) (citations omitted). Under this standard, however, a "district court does not have the discretion to rest its evidentiary decisions on incorrect interpretations of the Constitution." *Id.* Thus, a district court's interpretation of the Constitution is reviewed *de novo. Id.*; *see also United States v. Johnson*, 440 F.3d 832, 842 (6th Cir. 2006).

It appears from Bracy's briefing and from testimony at trial that a government witness, Cynthia Rogowski, was involved in an investigation of the Equal Employment Opportunity (EEO) Commission. Rogowski was a budget analyst who processed travel vouchers including, at least twice, vouchers for which Bracy was indicted. The investigation of Rogowski involved, perhaps among other things, an affair between Rogowski and her then or former supervisor. When she was first interviewed, Rogowski denied the affair. Subsequently, however, she confessed to it fully. JA 81-82. During the investigation, Bracy alleges, Rogowski accused him of threatening to post pictures that would expose the affair on the internet in an attempt to extort her. He also alleges that she wanted to see him prosecuted. The government first became aware of his inaccurate travel vouchers during the course of the Rogowski investigation.

Bracy argues that the district court should have let him cross examine Rogowski about that investigation at trial. The district court did not allow such cross examination because:

> [H]er credibility [was] not major. In other words, she [was] not a major witness against the defendant . . .. Considering that [ ] getting [ ] into the whole question of EEO complaints . . . just opens up a vast array of questions that prompts further evidence and [ ] we [would] have [had] mini-trials dealing with these EEO complaints. But more importantly than that even, is the fact that the jury may well

be misled into believing that they need to resolve these complaints, were they well-taken or were they not well-taken? . . . I don't feel that any relevancy of the EEO complaints or their settlements is sufficient in terms of probative value for impeachment purposes or any other purpose to outweigh the real danger of confusion of the issue, and misleading the jury is unfair prejudice.

Trial Tr., vol. 1, 9-10, Jan. 26, 2004; JA at 34-35; *see* Fed. R. Evid. 403. Bracy, however, alleges (rather cursorily) that Rogowski was "a key government witness. The investigation of Bracy arose from the Rogowski matter. Bracy himself pointed to Rogowski as the person who instructed him on the preparation of documentation necessary for travel reimbursement." Bracy Final Br. at 13.

Bracy urges two reasons why further cross-examination of Rogowski regarding this EEO matter was relevant. First, he argues that Rogowski in some way caused or encouraged his prosecution. The evidence of his wrongful conduct arose out of an investigation involving Rogowski, during which she allegedly expressed an interest in seeing him prosecuted. Second, Bracy argued and later testified that Rogowski advised him to claim mileage reimbursement in the manner he did after he informed her what he intended to do. Therefore, if she denied instructing him so, the evidence would be relevant to show she had a reason to lie.

Fed. R. Evid. 403 allows the district court to exclude evidence, as the court below indicated, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . .." As the Supreme Court has observed, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant," *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also United States v. Beverly*, 369 F.3d 516, 535 (6th Cir. 2004).

5

As to the first point, and as the government points out in its brief, Rogowski did not have any discretion as to Bracy's prosecution. Rather, only the United States Attorney and the Grand Jury have discretion to prosecute. While Rogowski might have brought Bracy's falsified vouchers to the attention of the U.S. Attorney, she could not influence the prosecution beyond that. Therefore, it is not relevant that Rogowski wished to see Bracy prosecuted. In addition, and as the trial judge indicated, our review leads us to conclude that Rogowski was not a 'star' government witness. Her testimony merely clarified the travel voucher approval process and confirmed that she had processed several of Bracy's vouchers. He does not contest these points. She does not testify that she knew of the inaccuracies in his reports; indeed, she indicated that she would not have approved them if she had known.

As to the second point, Rogowski never denied instructing Bracy on the travel vouchers for the simple reason that Bracy did not question her on that point at trial. Our review of the record indicates that she was never asked whether Bracy had told her what he intended to do or whether she advised Bracy to claim mileage reimbursements in the manner Bracy claims. Therefore, her credibility was only marginally relevant. She did not testify to any wrongdoing on his part; indeed, he does not contest any point of her testimony.[3] Therefore, we conclude that the "district court's

---

[3]The following colloquy took place during the government's direct examination of Rogowski:
[Attorney for the government]: If the modes of transportation used by Mr. Bracy [were] not accurately portrayed in the travel vouchers, would you have approved those travel vouchers?

[Rogowski]: No, I would not have.

[Attorney for the government]: Why not?

[Rogowski]: Because that would have been falsifying a travel document.
Trial Tr., vol.2, 164-65, January 27, 2004; JA 96-97. While it could be argued that Rogowski

6

ruling[ was a] correct legal application[ ] of standard, justifiable rules of evidence, and accordingly, did not deprive [Bracy] of the right to present a meaningful defense." *Blackwell*, 459 F.3d at 756 (citing *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996)).

## II. Sufficiency of the Evidence

Bracy argues that the government did not present sufficient evidence to prove that he acted with the requisite mental state to violate the FCA or the FSA. He argues that he "consistently expressed his belief" that he was entitled to mileage reimbursements for travel in a rental car and that Rogowski instructed him to request mileage reimbursements instead of reporting his air travel. Bracy Br. at 18-19.

Bracy does not, however, claim that the jury was incorrectly instructed on the mental state required for conviction. Therefore, we must affirm the jury's conviction if we determine that, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003); *see also United States v. Carter*, 465 F.3d 658, 664 (6th Cir. 2006) *cert. denied* 127 S. Ct. 2444 (May 21, 2007).

Bracy testified in his own defense at trial. He explained to the jury that the rules governing mileage reimbursements for the use of personal vehicles were complex and testified as to his belief that he could claim personal vehicle mileage reimbursement for miles driven in a rental car. JA at 102, 106. He also testified that Rogowski instructed him to claim personal vehicle mileage reimbursement on his travel vouchers rather than claim reimbursement for his actual air travel. JA

---

implicitly denied advising Bracy to report in the manner he did, considering Bracy did not explicitly ask her whether she had provided him advice on cross-examination, her credibility was not at issue.

at 40-41. In contrast, the government presented Bracy's superiors who testified that he was never instructed to claim mileage reimbursement rather than that for air travel. The jury, which was able to observe Bracy and weigh his credibility, clearly discounted his testimony and credited that of the other witnesses. The government also presented documentary evidence of Bracy's activities such that the jury could have inferred that Bracy had the requisite mental state. In light of this documentary and witness evidence, we conclude that a "rational trier of fact could have found [that Bracy had the requisite mental state] beyond a reasonable doubt." *Copeland*, 321 F.3d at 600.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.